UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
JANICE MINTO,

      *Plaintiff*,

         -against-

MOLLOY COLLEGE, et al.,

      *Defendants*.
--------------------------------X
DEBRA BACCHUS,

      *Plaintiff,*

         -against-

MOLLOY COLLEGE, et al.,

      *Defendants*.
--------------------------------X
DYTRA SEWELL,

      *Plaintiff,*

         -against-

MOLLOY COLLEGE, et al.,

      *Defendants*.
--------------------------------X

**MEMORANDUM & ORDER**

16-CV-276, 16-CV-278,
16-CV-279(KAM)(GRB)

**MATSUMOTO, United States District Judge:**

      Plaintiffs, three African American women formerly
enrolled in defendant Molloy College's Respiratory Care Program
("RCP"), each brought separate actions against Molloy College, a
professor, and various administrative employees of defendant

Molloy College.  (*See* ECF No. 1, Compl.[1])  Each plaintiff

respectively alleged race and gender discrimination under 42

U.S.C. § 2000d, also known as Title VI of the Civil Rights Act

of 1964; 42 U.S.C. § 1981; and New York's Human Rights Law

("NYSHRL"), N.Y. Exec. Law § 296.  Plaintiffs also alleged

common law breach of contract claims and civil claims under the

Racketeer Influenced and Criminal Organizations ("RICO") Act, 18

U.S.C. § 1961, *et seq*.  Each plaintiff has withdrawn all claims

against the individual college employees, *see Russell v. County

of Nassau*, 696 F. Supp. 2d 213, 238 (E.D.N.Y. 2010) ("Title VI

claims cannot be asserted against an individual defendant

because the individual is not the recipient of federal funds."),

and their claims, if any, brought under 42 U.S.C. § 1986.[2]  (*See*

ECF No. 21, Sewell Mem. in Opp. ("Opp.") 7.)  Plaintiffs all

withdrew their RICO claims against Molloy, as well.  (ECF No.

28, Stip.)

---

[1]    For ease of reference, unless otherwise indicated, record citations are to Docket No. 16-CV-279, for plaintiff Sewell.

[2]    Plaintiffs did not bring any numbered causes of action under either 42 U.S.C. §§ 1985 or 1986, though the complaint lists both statutes in its first paragraph describing the "Nature of the Action."  (Compl. ¶ 1.)  Taken together, the three complaints appear to be form complaints or from other, unrelated actions and contain inconsistent pronouns and unrelated allegations.  (*See, e.g.*, Compl. ¶ 68 (alleging discrimination on the basis of religious affiliation).)  Though plaintiffs did not apparently withdraw their claims brought under 42 U.S.C. § 1985, none of their numbered causes of action indicate they are brought under § 1985.  Similarly, the complaints state they are brought for age discrimination and sexual harassment, but all of the complaints are completely devoid of facts or allegations related to either claim.

Before the court are defendant Molloy's motions to dismiss each complaint, filed separately in each action. For the following reasons, defendant's motions are GRANTED, and plaintiffs' respective complaints are dismissed with leave to replead.

**BACKGROUND**

## I.    Factual Allegations

The following facts are taken from plaintiffs' respective complaints. The complaints are remarkably similar, and few alleged facts are unique to a particular plaintiff.

Plaintiffs are African American women. (Compl. ¶ 10.) Each was enrolled in Molloy's RCP in 2012, (*id.* ¶ 11), though Minto was previously enrolled in Molloy's Nursing Program, (Minto Compl. ¶ 11). Each plaintiff is also older than a typical college student: Sewell and Bacchus are in their 50s, (Compl. ¶ 10), and Minto, is in her 70s, (Minto Compl. ¶ 10). Plaintiffs were all enrolled in an RCP course taught by Robert Tralongo, professor and program director for Molloy's RCP, during the Fall 2012 term. (Compl. ¶ 21; Bacchus Compl. ¶¶ 14, 18.)

Molloy's campus is situated in Nassau County on New York's Long Island. (Compl. ¶ 5.) In the fall of 2012, Long Island endured Hurricane Sandy with its attendant and well-known resulting damage to the region's infrastructure, and subsequent

3

disruption to transportation and power systems. (*Id.* ¶¶ 14, 16.) Molloy issued a notice to its students in the wake of Hurricane Sandy that "students would be given wide latitude in demonstrating competence" for that semester's courses.[3] (*Id.* ¶ 16.) Contemporaneously, plaintiff Sewell's mother died the same day Hurricane Sandy hit Long Island, (Compl. ¶ 15), plaintiff Bacchus's Aunt died at around the same time, (Bacchus Compl. ¶ 14), and plaintiff Minto's mother was or would become seriously ill during the fall of 2012 and died in February 2013, (Minto Compl. ¶ 15).

Each plaintiff received a grade of "C" or lower in one or more RCP courses during the Fall 2012 semester. (Compl. ¶ 21.) The complaints allege that Molloy's course catalog states that Molloy requires RCP students attain a grade of "C+" or higher in each RCP course. (Compl. ¶ 22; Minto Compl. ¶ 18.) Plaintiffs had each previously repeated two RCP courses. (*See, e.g.*, ECF No. 20-2, McGrath Decl., Ex. 2, Sewell Ac. Tr.) No plaintiff was informed during the Fall 2012 semester that she was on academic probation or in danger of being expelled from RCP for academic deficiencies. (Compl. ¶¶ 19-20.) Plaintiffs' grades were posted on December 19, 2012, prior to Molloy's

---

[3]     Though all plaintiffs allege that Hurricane Sandy occurred in fall 2012 and was disruptive, a fact the court could take judicial notice of, only Sewell alleges Molloy offered "wide latitude" to students impacted by the storm. No plaintiff has alleged how the storm affected her ability to perform academically.

winter break. (*Id.* ¶ 23.) Upon receiving their grades, plaintiffs individually attempted to contact Professor Tralongo to discuss their respective grades, though he was not available until the Spring 2013 semester. (Compl. ¶ 25.) While on winter break, no plaintiff received notification she was being expelled from RCP. (*Id.* ¶ 26.)

Plaintiffs attempted to register for classes on January 17, 2013, the first day classes resumed for the Spring semester, but first needed approval from former-defendant Donna Fitzgerald, Chairperson of RCP. (*Id.* ¶ 27.) Fitzgerald told plaintiffs, individually, they were expelled from RCP, though Sewell first paid an outstanding tuition bill of $5,000. (Compl. ¶27, n.2.) Sewell and Minto then individually met their advisor, Professor Lasandra Haynes, (*id.* ¶ 28), and Bacchus sought to speak with Associate Dean of RCP,[4] and former defendant, Mary Jane Reilly, the same day. (Bacchus Compl. ¶ 21-22.) Haynes also suggested Sewell and Minto see Reilly. (Compl. ¶ 28.) On either January 17 or 18, 2013, each plaintiff met individually with Reilly, and were told that because they each had "repeated more than one class," in accordance with RCP's rules, they were "ineligible to continue in the program" and that their time to appeal their respective grades had

---

[4]     Sewell's and Minto's complaints both refer to Reilly as an Associate Dean for "Academic Services and Academic Integrity," as well. (Compl. ¶ 28.)

expired. (*Id.* ¶ 29.) Each plaintiff inquired with Reilly of other degree options at Molloy, but each was informed that she could not transfer any earned credits from RCP to another program she was interested in. (*Id.* ¶ 31.)

All plaintiffs allege certain Caucasian or male students in RCP were "routinely permitted to repeat courses beyond the stated limit" in Molloy's Course Catalog. (*Id.* ¶ 34.) Sewell further alleges she received no latitude in the wake of Hurricane Sandy from any of her professors, or from Tralongo, RCP's Director, though non-African American males did receive such latitude for difficulties they experienced as a result of Hurricane Sandy. (*Id.* ¶ 17-18.)

Plaintiffs also allege that Molloy represented that each plaintiff "would not be treated in a discriminatory fashion based upon her race, color, ethnic background or gender" through its "written college policies, publicized [by] the college catalog, student conduct manual and other means." (*Id.* ¶ 43.) Similarly, Molloy implemented and publicized "rules and procedures for maintaining academic standing in the" RCP, upon which each plaintiff relied. (*Id.* ¶ 44.) Defendant Molloy, however, modified these policies to the benefit of certain other students, allowing them "to retake courses as many times as necessary in order to pass the course and graduate from" RCP.

(*Id.* ¶ 45.)  Plaintiffs were "denied th[is] opportunity," by Tralongo and Molloy.  (*Id.* ¶¶ 45, 54.)

Tralongo carried out this practice, of permitting "[s]tudents who are not African American or women[,] who did not pass more than one course" to repeatedly take these and other courses until they passed and graduated, "with the knowledge, cooperation, and permission of the other [former] defendants." (*Id.* ¶¶ 54, 61.)  Further, all former defendants "knew that Professor Trolongo (sic) had deliberately absented himself from access to plaintiff[s]" and other students immediately after grades posted on December 19, 2012; the former defendants knew Tralongo did this to prevent plaintiffs from appealing their grades.  (*Id.* ¶ 62.)  Plaintiffs also allege that Molloy and the former defendants "planned to expel the plaintiff[s] . . . from the RCP," and "conspired to withhold" the fact that plaintiffs would be expelled from the program after the time to appeal had expired.  (*Id.* ¶¶ 63-64.)

## II.    Procedural History

It is important to describe the procedural posture of the three separate cases, and the history of plaintiffs' representation by counsel, as it bears on some of the court's analysis below.  Plaintiffs, all represented by the same attorney, each initiated their respective actions on January 19, 2016, by filing a complaint.  (*See, e.g.*, ECF No. 1, Compl.)

7

Each plaintiff also attached proposed summonses.  (ECF No. 1-2.)
These summonses, however, were rejected by the Clerk of Court on
January 20, 2019, and counsel for plaintiffs was "advised to
submit another proposed summons."  (Docket Entry dated Jan. 20,
2016.)  Counsel did not file a revised proposed summons in any
of the three cases until May 16, 2016.[5]  Summons issued as to
each defendant on May 17, 2016, (ECF No. 5), defendants were
served the same day, (ECF No. 10), and defendants appeared on
June 6, 2016, (ECF No. 6).

Defendant Molloy and the former defendants served a
motion to dismiss on plaintiffs on June 7, 2016, (ECF No. 8),
which motion was fully-briefed and filed on September 20, 2016,
(ECF No. 17).  The parties then stipulated to the dismissal of
all claims against the individual defendants and of certain
claims against Molloy College.  (ECF No. 28.)

Plaintiffs' counsel was then suspended from practice
for six months, which term commenced on August 4, 2017; the
court administratively closed the matter for nine months and
denied without prejudice remaining defendant Molloy's motion to
dismiss.  (ECF No. 39, Minute Order.)  Plaintiffs' counsel

---

[5]     The 2015 Amendments to the Federal Rules of Civil Procedure, effective
December 1, 2015, reduced the time plaintiffs were permitted to serve process
on a defendant from 120 days to 90 days.  See Fed. R. Civ. P. 4 advisory
committee's note to 2015 amendment.  Plaintiffs' complaints, filed January
19, 2016, were due to be served on each defendant by April 18, 2016, one
month before plaintiffs' counsel obtained summonses for each plaintiff.

informed the court by letter filed April 26, 2018, that, although his term of suspension had expired, he was the subject of an additional disciplinary grievance and a client financial dispute that would not be resolved until later in 2018. (ECF No. 40, Pls.' Ltr.) He thus requested the court extend the stay in the instant cases until August 1, 2018. (*Id.*) All three cases were then reassigned to the undersigned on May 1, 2018, plaintiffs' counsel's request was denied, and the cases were reopened on May 8, 2018. (Docket Order dated May 8, 2018.) Plaintiffs were permitted leave to retain new counsel by July 31, 2018, or inform the court that they intended to proceed *pro se*. (Minute Entry dated June 26, 2018.) On August 2, 2018, however, defendant informed the court that no new counsel had contacted its counsel's office. (ECF No. 47, Def.'s Ltr.) The parties appeared for a status conference before Magistrate Judge Brown, during which plaintiffs indicated they continued to look for counsel. (*See* Minute Entry dated Oct. 10, 2018.) As the case was no longer stayed, defendant's motions to dismiss were reopened. (*Id.*) No counsel has appeared for plaintiffs since the October 10, 2018 status conference, and the court has not received an update from plaintiffs' former counsel regarding his outstanding disciplinary and client disputes.

## LEGAL STANDARD

A plaintiff must plead facts that, if accepted as

true, "state a claim to relief that is plausible on its face."
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A
complaint is facially plausible when the "plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A
complaint need not contain detailed factual allegations, but
must contain more than mere "labels and conclusions" or a
"formulaic recitation of the elements of a cause of action" or
"naked assertions" devoid of "further factual enhancement." *Id*.
For motions under Rule 12(b)(6), the court assumes the truth of
all facts asserted in the operative complaint and draws all
reasonable inferences from those facts in favor of the non-
moving plaintiff. *Global Network Commc'ns, Inc. v. City of New
York*, 458 F.3d 150, 154 (2d Cir. 2006).

**DISCUSSION**

**I.    Timeliness of Service**

Defendant first moves to dismiss each of the
complaints on the basis of untimely service of process, pursuant
to Federal Rule of Civil Procedure 4(m). (DM 4.) Plaintiffs
respond that their counsel, and his wife, had become seriously
ill during the service period and could not effect timely
service, thus establishing good cause. (Opp. 3-4.)

Under Rule 4, a plaintiff must serve the summons and
complaint on a defendant within ninety days of filing the
complaint.  Fed. R. Civ. P. 4(c)(1).  Rule 4(m) provides that
the court, upon a failure to serve a defendant timely, must
either "dismiss the action without prejudice . . . or order that
service be made within a specified time."  Fed. R. Civ. P. 4(m).
If a plaintiff can establish good cause for a failure to serve,
however, "the court must extend the time for service for an
appropriate period."  *Id.*

The Second Circuit has held that when district courts
consider whether to dismiss a complaint for failure to properly
serve, "*pro se* plaintiffs should be granted special leniency."
*Thrall v. Cent. N.Y. Reg'l Trans. Auth.*, 399 F. App'x 663, 666
(2d Cir. 2010) (quoting *Lesane v. Hall's Sec. Analyst, Inc.*, 239
F.3d 206, 209 (2d Cir. 2001)); *see also Jaiyeola v. Carrier
Corp.*, 73 F. App'x 492, 493–94 (2d Cir. 2003) (reversing a
district court's decision to dismiss the *pro se* plaintiff's
complaint for failure of proper service).  Here, however,
plaintiffs were represented by counsel during the relevant
period.

Good cause generally requires "some colorable excuse"
for the failure.  *Meilleur v. Strong*, 682 F.3d 56, 61 (2d Cir.
2012) (quoting *Zapata v. City of New York*, 502 F.3d 192, 198 (2d
Cir. 2007)).  "Good cause is generally found only in exceptional

circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond [her] control." *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 597–98 (E.D.N.Y. 2013) (quoting *Beauvoir v. U.S. Secret Serv.*, 234 F.R.D. 55, 56 (E.D.N.Y. 2006)). It is well-settled in this Circuit "that an attorney's inadvertence, neglect, mistake or misplaced reliance does not suffice to establish good cause for failure to make proper service within 120 days." *Tevdorachvili v. Chase Manhattan Bank*, 103 F. Supp. 2d 632, 639 (E.D.N.Y. 2000); *see also McGregor v. United States*, 933 F.2d 156, 160 (2d Cir. 1991). Courts frequently hold that delay caused by the negligence of a party's attorney does not constitute good cause to excuse the requirement for timely service. *Myers v. Sec'y of the Dept' of the Treasury,* 173 F.R.D. 44, 47 (E.D.N.Y. 1997). Courts have also declined to grant an extension when litigants fail to make even the most basic efforts to effectuate service on a party during the 90-day period provided for under Rule 4(m). *See Nat'l Union Fire Ins. Co. v. Sun*, No. 93-CV-7170, 1994 WL 463009, at *4 (S.D.N.Y. Aug. 25, 1994).

In the absence of good cause, then, a court is permitted to grant an extension within its discretion. Fed. R. Civ. P. 4(m). Though the Rules do not provide criteria for a discretionary extension, courts have considered the following

four factors: (1) whether any applicable statutes of limitations would bar the action once refiled; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by extending the plaintiff's time for service. *See Zankel v. United States*, 921 F.2d 432, 437–38 (2d Cir. 1990) (discussing the discretionary factors in a suit against the United States government); *Jones v. Westchester Cty.*, 182 F. Supp. 3d 134, 145 (S.D.N.Y. 2016); *Fowler v. City of New York*, No. 13-CV-2372, 2015 WL 9462097, at *5 (E.D.N.Y. Dec. 23, 2015).

Plaintiffs' counsel argues in his opposition to the instant motions that he and his wife contracted pneumonia sometime in early March 2016, and they required hospitalization. (Opp. 3-4.) This serious illness left counsel unable to continue his work for some time and counsel indicates his recovery was slow. (*Id.*) As the complaints were all filed on January 19, 2016, plaintiffs' time to serve defendants expired on April 18, 2016. Plaintiffs' counsel does not indicate that he did miss, or how or why he missed, the notice that his proposed summonses were rejected, or what events beyond his control prevented him from serving defendants from January 19, 2016 until he fell ill in early March. Though the court does not doubt counsel was seriously ill, he had ample time prior to

becoming ill to procure a proper summons and effect proper service of the summons and complaint through a process server. He makes no representation as to his diligent efforts to serve defendants with process in February 2013. Counsel's illness is clearly beyond his control, but his more than five-week delay in initiating service was not beyond his control. Attorney negligence does not constitute good cause, and the court must now consider whether to extend the time for service, *nunc pro tunc*, within its discretion, based on the four factors in *Zankel.*

First, the fact that a refiled claim would be untimely weighs against dismissal under Rule 4(m). *Hollomon v. City of New York*, No. 04-CV-2964, 2006 WL 2135800, at *4 (E.D.N.Y. July 31, 2006) ("A court should not refuse to extend the time of service simply so that the defendant can benefit from the time-bar."). Plaintiffs have been proceeding *pro se* since their counsel's suspension, and if the action were dismissed, as discussed below, a re-filed complaint would almost certainly be untimely. Thus, this factor weighs in favor of granting an extension.

As to the second and third factors, the court doubts defendant had actual knowledge of the basis of plaintiffs' claims, though plaintiffs do allege knowledge of, and intentional discrimination on the part of defendants. This

factor, then, is a toss-up.  In any event, considering the third

factor, there is no evidence defendant attempted to conceal the

defect in service, nor could they as it appears they were

unaware of the lawsuit.  This factor, then weighs in favor of

dismissal.

Finally, as to the fourth factor—prejudice to

defendant—there is no *per se* rule on what constitutes prejudice

within the context of untimely or improper service of process.

*See Zapata*, 502 F.3d at 198.  Here, though, there is no evidence

defendant was or will be prejudiced by the untimely service and

the court finds there is none.  This factor weighs in favor of

an extension.  In light of plaintiffs' current status as *pro se*

litigants, the fact that dismissal would certainly result in

their claims being time-barred, and that the failure of service

clearly appears to be a shortcoming of their former, and now-

suspended, counsel, the court grants an extension of time, *nunc*

*pro tunc*, for plaintiffs to serve defendant.  Thus, the court

grants an extension to May 17, 2016, the date defendants were

properly served with process.  Defendant's motion to dismiss on

this basis is therefore DENIED.

## II.     Statute of Limitations

Defendant next moves against the complaint as time-

barred.  It argues plaintiffs' respective claims accrued on or

about December 19, 2012, when they learned of their failing

15

grade and knew or should have known they would be expelled under RCP rules. (DM 5-6.) Defendant argues that plaintiffs' complaints, filed January 17, 2016, are therefore time-barred under the applicable statutes of limitations.

State statutes of limitations apply to plaintiffs' discrimination claims and, in New York, each of plaintiffs' discrimination claims has a three-year statute of limitations. *See Martin v. State Univ. of N.Y.*, 704 F. Supp. 2d 202, 234 (E.D.N.Y. 2010) ("Although Title VI does not contain an express statute of limitations, in New York, such claims fall within the three-year statute of limitations applicable to personal injury causes of action." (quoting *Al-Haideri v. Trs. of Columbia Univ.*, No. 07-CV-106, 2007 WL 2187102, at *2 (S.D.N.Y. July 26, 2007))); *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) ("The statute of limitations applicable to claims brought under § 1981 . . . in New York is three years."); *Paige v. Police Dep't of Schenectady*, 264 F.3d 197, 199 n.2 (2d Cir. 2001) (§ 1985 claims); *Edwards v. Jericho Union Free Sch. Dist.*, 904 F. Supp. 2d 294, 303 (E.D.N.Y. 2012) (NYSHRL claims).

Though the court applies state statutes of limitations, federal law governs when a federal claim accrues. *Leonhard v. United States*, 633 F.2d 599, 613 (2d Cir. 1980). Under federal law, the limitations period begins to run "when the plaintiff knows or has reason to know of the injury that is

the basis of the action." *Nadolecki v. William Floyd Union Free Sch. Dist.*, No. 15-CV-2915, 2016 WL 4768823, at *8 (E.D.N.Y. July 6, 2016) (quoting *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)). Where the alleged injury is discrimination, "the proper focus is on the time of the discriminatory act." *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981).

Plaintiffs' complaints were each filed on January 19, 2016, a Tuesday following the Federal holiday, Martin Luther King, Jr. Day, January 18, 2016. Limitations periods expiring on January 16, 2016, the preceding Saturday, by operation of the Federal Rules, would be extended to January 19, 2016. *See* Fed. R. Civ. P. 6(a)(1)(C). Thus, plaintiffs' claims based on acts occurring January 15, 2013, or earlier are time-barred. Plaintiffs do not allege any facts, or similarly argue, that the continuing violation doctrine applies to their case.

Plaintiffs' claims cannot be said to have accrued when they received their failing grade. Though they should have known that failing a third course would violate program requirements, they allege that so-called "third strikes" had been overlooked before. Indeed, their allegations that they each attempted to register for the following semester would belie the notion that they knew or should have known they were expelled from RCP upon receiving their respective grades in December. They do not allege that they received a failing grade

because of their membership in protected categories. They do, however, each allege that Tralongo was inaccessible to plaintiffs during their appeals period, but that he was concurrently accessible for white, male students. Defendant points out that Tralongo's selective unavailability would technically be impossible, that is, that Professor Tralongo could not both be absent from campus for certain students, and present for others at the same time. The court agrees with defendant's argument in some sense, but notes that the Professor could very well have ignored plaintiffs' entreaties while acknowledging other students' requests. In any event, this alleged discriminatory act, would have been complete at the conclusion of the appeals period, ten days after plaintiffs received their grades, or approximately December 27, 2012. (Opp. 5.) Plaintiffs' claims based on this act, then, would be time-barred. The same applies to plaintiffs' claims based on Tralongo's alleged discriminatory decision not to afford them any accommodation for the effects of Hurricane Sandy, assuming this decision was completed at the moment he submitted plaintiffs' final grades.

Based on the foregoing, the court finds that plaintiffs' expulsion was not affected until January 17, 2013, when they were not permitted to repeat the courses in which they had previously earned a C grade or lower. Plaintiffs allege

that defendant's refusal to allow them to repeat the courses in which they earned a grade of C or lower, was discriminatory as other non-African American or male students were permitted to repeat the courses.  Therefore, plaintiffs' claims based on at least this act are not time-barred and may proceed.  The court may nevertheless consider the conduct of Tralongo and the former defendants to determine if plaintiffs sufficiently plead a claim for relief, as they may support an inference of discriminatory intent as discussed below.  The court declines, however, to find that all or part of plaintiffs' claims are time-barred, as it ultimately concludes that plaintiffs' have failed to sufficiently plead any claim for relief.

III.    **Plaintiffs' Discrimination Claims**

Plaintiffs bring claims for race discrimination under 42 U.S.C. § 2000d, also known as Title VI, 42 U.S.C. § 1981, and NYSHRL.  Plaintiffs also appear to allege that defendant discriminated against plaintiffs on the basis of age or religion, but these appear to be from an earlier draft complaint, as there is no fact alleging plaintiffs' respective religious affiliation, and only a simple statement of each plaintiff's age, without factual embellishment as to how their age serves as a basis for inferring defendant's age-based discriminatory intent.  (*See, e.g.*, Bacchus Compl. ¶¶ 1, 56.)  Plaintiffs similarly appear to bring claims under 42 U.S.C. §

1985, which prohibits conspiracy to interfere with civil rights, and list this statute on the face of their complaints. None of plaintiffs' numbered causes of action, however, refer to § 1985. Though plaintiffs' allegations concerning their now-withdrawn RICO claims could arguably support a conspiracy claim, plaintiffs do not argue as much in their opposition to the instant motion. Indeed, there is not a single mention of plaintiffs' causes of action except for the withdrawn claims, and courts have deemed such claims abandoned when plaintiffs practically fail to oppose a motion to dismiss. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92–93 (2d Cir. 1995). There is not a single citation to case law or other authority in plaintiffs' opposition briefs; only an argument that the claims are sufficiently alleged, and a request that plaintiffs be permitted leave to replead. Plaintiffs only appear to oppose defendant's motion pertaining to the timeliness of service and the statute of limitations. Nevertheless, the court analyzes the sufficiency of plaintiffs' pleadings

Defendant moves to dismiss each of plaintiffs' claims brought under Federal law for failure to allege discriminatory animus. (DM 9-10.) Defendant argues that plaintiffs' allegations are insufficient to plausibly infer race-, sex-, or age-based discriminatory intent, and that plaintiffs failed to sufficiently allege substantially similar comparators to permit

an inference of discriminatory intent based on disparate
treatment. (*Id.* at 10.) For these and other reasons, the court
finds the complaints do not state a claim for relief.

Title VI prohibits discrimination based on race,
color, or national origin by entities receiving federal funds.
To establish such a claim, a plaintiff must plead: (1) that the
defendant discriminated against him on the basis of race or
national origin; (2) that the discrimination was intentional;
and (3) that the discrimination was a "substantial" or
"motivating factor" for the defendant's actions. *Tolbert v.
Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001).

Section 1981 provides that "[a]ll persons within the
jurisdiction of the United States shall have the same right in
every State and Territory to . . . the full and equal benefit of
all laws and proceedings for the security of persons and
property as is enjoyed by white citizens." 42 U.S.C. § 1981(a).
This prohibition applies to private as well as state actors,
including independent academic institutions. *Tolbert*, 242 F.3d
at 69 (citing *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604,
609 (1987)). To establish a § 1981 claim, a plaintiff must
show: (1) that she is a member of a racial minority; (2) an
intent to discriminate on the basis of race by the defendant;
and (3) that the discrimination concerned one or more of the
activities enumerated in § 1981. See *Mian v. Donaldson, Lufkin*

& *Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam). Those activities covered by Section 1981 include enrollment in a university such as defendant Molloy. *See Tripp v. Long Island Univ.*, 48 F. Supp. 2d 220, 224 (E.D.N.Y. 1999) (discussing enumerated activities under § 1981 and finding the statute provides cause of action against university charged with discriminatory conduct against student).

Claims under both Title VI and § 1981 are subject to the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) ("[Plaintiff]'s disparate treatment claim under . . . § 1981 . . . is subject to the burden-shifting evidentiary framework set forth in *McDonnell Douglas* . . . in the initial phase of [this] litigation." (citation omitted)); *see also Lopez v. Webster Cent. Sch. Dist.*, 682 F. Supp. 2d 274, 279 (W.D.N.Y. 2010) ("Courts have applied the familiar *McDonnell Douglas* burden-shifting analysis to cases arising under Title VI.") (footnote omitted). Courts also analyze discrimination claims brought under NYSHRL using the *McDonnell Douglas* framework. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000). Thus, the court will apply the framework to all of plaintiffs' race-based discrimination claims under federal and state law, and to plaintiffs' gender-based discrimination claims under state law.

The Second Circuit has explained, however, that a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (citing *Littlejohn*, 795 F.3d at 306, 311). Rather, a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311; *see also Moore v. City of New York*, No. 15-CV-6600, 2017 WL 35450, at *11 (S.D.N.Y. Jan. 3, 2017), *adopted by* No. 15-CV-6600, 2017 WL 1064714 (S.D.N.Y. Mar. 20, 2017). Thus, on a motion to dismiss, the court treats the elements of a *prima facie* case as "an outline of what is necessary to render a plaintiff's . . . discrimination claims for relief plausible." *Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 495 (E.D.N.Y. 2019) (quoting *Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 429 (S.D.N.Y. 2014)); *see also Vega*, 801 F.3d at 84 n.7 ("The elements of a *prima facie* case may be used as a prism to shed light upon the plausibility of the claim."). Plaintiffs must simply allege facts that allow the court, in substance, to *infer* the essential elements of a *prima facie* case. *Id.*

"The essential elements of the claim are actions that were racially motivated and purposefully discriminatory." *Jenkins v. Arcade Bldg. Maint.*, 44 F. Supp. 2d 524, 528

(S.D.N.Y. 1999). "Hence, to be cognizable under Title VI, defendants' discriminatory intent must 'actually play a role in' and have a 'determinative influence' on the adverse action." *J.E. ex rel. Edwards v. Ctr. Moriches Union Free Sch. Dist.*, 898 F. Supp. 2d 516, 556 (E.D.N.Y. 2012) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)). "[A]n invidious discriminatory purpose may often be inferred from the totality of the relevant facts . . . ." *Washington v. Davis*, 426 U.S. 229, 242 (1976). But, "fact-specific allegations of a causal link between the defendant's actions and the plaintiff's race are required." *Jenkins*, 44 F. Supp. 2d at 528.

An inference of discriminatory intent can be drawn from "remarks that could be viewed as reflecting discriminatory animus[,]" or through facts establishing that students outside of plaintiff's protected class "were given preferential treatment[.]" *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (discussing lack of inference of discriminatory animus in dismissing Title VII sex discrimination claim). Courts should take an expansive approach to identifying evidence of discriminatory intent, as "plaintiffs in discrimination suits often must rely on the cumulative weight of circumstantial evidence," and a defendant "is unlikely to leave a 'smoking gun.'" *Wong v. Yoo*, 649 F. Supp. 2d 34, 69 (E.D.N.Y. 2009)

(quoting *Norton v. Sam's Club*, 145 F.3d 114, 119 (2d Cir. 1998)).

Plaintiffs appear to allege they were treated more harshly than those students not in their protected class. Although evidence of disparate treatment may suffice to support an inference of discrimination, "[a] plaintiff relying on disparate treatment evidence 'must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.'" *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). "[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." *Graham*, 230 F.3d at 40. Though "[i]ssues regarding appropriate comparators are often addressed in the context of a summary judgment motion following discovery," courts have granted motions to dismiss where the complaint failed to proffer sufficient facts regarding comparators to support the contention the comparators were similarly situated to the plaintiffs. *De La Pena v. Metro. Life Ins. Co.*, 953 F. Supp. 2d 393, 414 (E.D.N.Y. 2013), *aff'd*, 552 F. App'x 98 (2d Cir. 2014).

Finally, as Molloy College itself is a defendant, where a plaintiff's claims do not involve an official policy,

"'a damages remedy will not lie . . . unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [defendant's] behalf has actual knowledge of discrimination in the [defendant's] programs and fails adequately to respond.'" *Mathis v. Dominican Coll.*, No. 15-CV-7641, 2016 WL 5257198, at *3 (S.D.N.Y. Sept. 22, 2016) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)).

Given these requirements, conclusory statements of the elements of a discrimination claim or formulaic allegations that a plaintiff was treated differently or discriminated against by defendants due to his race are insufficient to raise a plausible claim for relief under Title VI. *See Kajoshaj v. N.Y.C. Dep't of Educ.*, 543 F. App'x 11, 14 (2d Cir. 2013) (collecting cases). "A complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Act, fails to state a claim under Rule 12(b)(6)." *Id.* (citing *Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978)). "Without factual amplification, the generic allegation of disparate treatment related to an unspecified class of Caucasian persons is simply not sufficient to 'nudge her claims across the line from conceivable to plausible,' and thus is insufficient to support her racial discrimination claim." *Henry v. N.Y.C.*

*Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014) (alteration omitted) (citation omitted).

As an initial matter, though plaintiffs' complaints each refer to gender discrimination under both Title VI and § 1981, neither statute provides a remedy for such discrimination. *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998) ("It is . . . settled that Section 1981 does not prohibit discrimination on the basis of gender or religion." (citing *Runyon v. McCrary*, 427 U.S. 160, 170–71 (1976))); *Bailey v. N.Y. Law Sch.*, No. 16-CV-4283, 2017 WL 6611582, at *14 (S.D.N.Y. Dec. 27, 2017) ("[G]ender is not a protected class under Title VI.").

Plaintiffs allege they are African-American women. Thus, the court will treat this first element as established. Left for the court to determine under the *McDonnel Douglas* pleading framework is whether the well-pleaded allegations are sufficient to raise an inference of discriminatory intent based on plaintiffs' race. The court finds they do not.[6]

Plaintiffs' claims of racial discrimination and a racially hostile environment stem from disparate treatment they allegedly received at the hands of defendant and its employees in denying them accommodations in the wake of Hurricane Sandy, and in enforcing Molloy's policy of expelling students from RCP

---

[6] Plaintiffs' Title VI claims would alternatively fall for failure to allege in any respect that defendant Molloy College receives federal funds.

who fail more than two courses.[7]  Though the court has already determined that only claims based on plaintiffs' January 17, 2013 expulsion are timely, even the untimely alleged acts by Tralongo of absenting himself from campus or failing to give accommodations, as alleged, cannot support an inference of discriminatory intent required by *McDonnell-Douglas.* Plaintiffs' allegations are entirely conclusory as to each of their theories of discrimination.

Each of plaintiff's complaints fails to allege sufficient facts to state a discriminatory disparate treatment claim.  "Without factual amplification, the generic allegation of disparate treatment related to an unspecified class of Caucasian persons is simply not sufficient to 'nudge her claims across the line from conceivable to plausible.'"  *Henry*, 18 F. Supp. 3d at 408 (quoting *Twombly*, 550 U.S. at 570); *see also Bhanusali v. Orange Reg'l Med. Ctr.*, No. 10-CV-6694, 2013 WL 4828657, at *5 (S.D.N.Y. Aug. 12, 2013) (dismissing disparate treatment claim on the ground that "Plaintiffs' general allegations that misconduct by 'younger and/or white physicians'

---

[7]     Only Sewell alleged former defendant Tralongo made unspecified disparaging remarks, but plaintiffs do not otherwise allege or argue in opposing defendant's motion that their discrimination claims arise from a racially hostile educational environment.  But, even if they did, Sewell's allegations that Tralongo made disparaging remarks falls far short of pleading severe, pervasive, and objectively offensive harassment, and that defendant Molloy "had actual knowledge of the harassment" and was subsequently deliberately indifferent.  *T.C. v. Valley Cent. Sch. Dist.*, 777 F. Supp. 2d 577, 595 (S.D.N.Y. 2011).

went without peer review or discipline . . . [we]re wholly
conclusory, d[id] not specify the individuals involved or the
nature of their alleged misconduct, and [we]re thus insufficient
to render plausible the inference of discriminatory intent");
*Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 499
(E.D.N.Y. 2019).

The Second Circuit has affirmed dismissals where, as
here, the complaint only "allege[d] facts consistent with a
discrimination claim," *i.e.* that members outside the plaintiff's
protected group were treated differently, because the complaint
"stop[ped] short of the line between possibility and
plausibility of entitlement to relief." *Sanders v. Grenadier
Realty, Inc.*, 367 F. App'x 173, 175 (2d Cir. 2010) (quotation
marks in second quotation omitted) (quoting *Ashcroft*, 556 U.S.
at 678); *see also Kajoshaj v. City of New York*, No. 11-CV-4780,
2013 WL 249408, at *2 (E.D.N.Y. Jan. 23, 2013) (dismissing
complaint that alleged "[u]pon information and belief, non-
Muslim students from families of non-Albanian origin" that
received test scores and grades similar to the plaintiff
advanced in grades though plaintiff was required to repeat),
*aff'd sub nom. Kajoshaj v. N.Y.C. Dep't of Educ.*, 543 F. App'x
11 (2d Cir. 2013). "[W]ithout specific factual allegations
concerning these allegedly similarly situated individuals,
[plaintiffs'] bare conclusion cannot survive a motion to

dismiss." *Kajoshaj*, 2013 WL 249408, at *2 (citing *D.F. ex rel. Finkle v. Bd. of Educ. of Syosset Cent. Sch. Dist.*, 386 F. Supp. 2d 119, 128 (E.D.N.Y. 2005)).

Given the case law in this Circuit, plaintiffs' spare allegation that "[c]ertain Caucasian or male students in the RCP [we]re routinely permitted to repeat courses" is insufficient either to establish disparate treatment or to infer discriminatory intent.[8] Plaintiffs fall well short of pleading these unidentified comparators are "similarly situated 'in all material respects.'" *Broich v. Inc. Vill. of Southampton*, 462 F. App'x 39, 42 (2d Cir. 2012) (quoting *Mandell*, 316 F.3d at 370). "The naked allegation that [defendant] 'selectively enforced the College rules . . . against plaintiffs . . . because they are black . . .' is too conclusory to survive a

---

[8]    The court is aware of several cases in this Circuit in which a complaint alleging discrimination survived a motion to dismiss despite similarly spare allegations. *See, e.g.*, *Phillip v. Univ. of Rochester*, 316 F.3d 291 (2d Cir. 2003); *Peterson v. Long Island R. Co.*, No. 10-CV-480, 2010 WL 2671717, at *4 (E.D.N.Y. June 30, 2010). These cases are distinguishable from the instant case for two reasons. First, the respective complaints alleged specific conduct directed at the plaintiffs (*e.g.*, racial comments made by defendant and being singled out by campus security among a group including non-minorities). More importantly, however, both cases appear to use the outdated "notice" pleading standard. *Peterson*, 2010 WL 2671717, at *4 ("The allegations . . . sufficiently provide defendant with notice of [plaintiff]'s claim that he was punished more severely than white coworkers in like circumstances."); *Phillip*, 316 F.3d at 298-99 ("[T]hese allegations 'gave respondent fair notice of what petitioner's claims are and the grounds upon which they rest.'"(quoting *Swierkiewicz v. Sorema*, 534 U.S. 506, 514 (2002))). After *Twombly* and *Iqbal*, plaintiffs are held to the "plausibility" standard and, in discrimination cases, must plead circumstances supporting an inference of discriminatory intent in order to survive a motion to dismiss. *See E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) ("Since *Twombly* and *Iqbal*, *Swierkiewicz*'s continued vitality has been an open question in this Circuit.").

motion to dismiss." *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988) (citing *Martin*, 588 F.2d at 372).

Although "allegations of discriminatory comments directed at the plaintiff's racial group are a recognized method of establishing discriminatory intent", only Sewell made such an allegation but did so without any factual development. *Henry*, 18 F. Supp. 3d at 408 (citing *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996)). Moreover, although a discriminatory purpose may be inferred from the totality of relevant facts, the conclusory allegations here cannot establish the required "causal link between the defendant's actions and the plaintiff's race." *Williams v. City Univ. of N.Y.*, No. 13-CV-1055, 2014 WL 4207112, at *8 (E.D.N.Y. Feb. 7, 2014) (citing *Jenkins*, 44 F. Supp. 2d at 528), *adopted by* No. 13-CV-1055, 2014 WL 4207115 (E.D.N.Y. Aug. 25, 2014), *aff'd*, 633 F. App'x 541 (2d Cir. 2015); *see also De La Pena v. Metro. Life Ins. Co.*, 953 F. Supp. 2d 393, 413 (E.D.N.Y. 2013) ("Without any further facts, defendant's statements, while politically incorrect, do not raise a plausible inference that his actions towards the [plaintiffs] were a result of [their] membership in a protected class.").

As to plaintiffs' remaining allegation that they were denied accommodations from Tralongo on the basis of race or gender, even if these claims were not time-barred, the

allegations are similarly conclusory and factually insufficient.
All plaintiffs note the general effect of Hurricane Sandy on
life on Long Island, New York in late 2012.  Only Sewell alleges
Molloy indicated it would accommodate students impacted by the
storm's disruptions, but without further amplification.[9]  No
plaintiff, however, indicates *how* Hurricane Sandy affected them
personally.  No plaintiff identifies accommodations they sought
or which would have positively impacted their course
performance.  Although each plaintiff alleges the loss of a
close family member, none alleges the impact that the death of a
family member had on their personal lives or ability to perform
in their RCP courses.  These allegations of disparate treatment
are thus speculative.  Nowhere in the complaints do plaintiffs
specify what accommodation they were denied but which was
extended to similarly situated, non-African American or male
students.

These and the rest of the allegations in the
complaints are conclusory and devoid of factual content that
permits a plausible inference of any discriminatory conduct.
Plaintiffs' "bald assertions of discrimination and retaliation,

---

[9]    While no plaintiff alleges they received a failing grade because of
their race or gender, they each allege that they would have "met the
requirement for a C+ grade" if given the "special accommodations the college
required to be provided to all students as a result of" Hurricane Sandy, and
that Tralongo withheld these accommodations for improper reasons.  (Compl. ¶
67.)

unsupported by any comments, actions, or examples of similarly-situated individuals outside of [their] protected class being treated differently" do not permit the court to infer that defendant Molloy possessed a discriminatory motive. *Jackson v. County of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011). The allegations in each complaint "are implausible and insufficient to survive a motion to dismiss." *Id.* Thus, plaintiffs fail to state claim to relief for race-based discrimination under both federal and state law, and for gender-based discrimination under state law. Defendant's motion to dismiss plaintiffs' race and gender discrimination claims is GRANTED.

## IV.    Plaintiffs' Breach of Contract Claims

Defendant next moves to dismiss plaintiffs' breach of contract claims under New York State law. Defendant argues that plaintiffs have not pleaded the existence of a contract, their own performance, or specific provisions of the contract allegedly breached by defendant. (DM 13.) Each plaintiff has not substantially responded to defendant's motion to dismiss her breach of contract claim.

"The elements of a breach of contract claim in New York are: (1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." *Kramer v. N.Y.C. Bd. of Educ.*, 715 F. Supp. 2d 335, 356 (E.D.N.Y. 2010)

(quoting *RCN Telecom Servs., Inc. v. 202 Centre St. Realty LLC*, 156 F. App'x 349, 350-51 (2d Cir. 2005)). Additionally, to withstand a motion to dismiss, a breach of contract claim must allege the essential terms of the parties' purported contract in nonconclusory language, including the specific provisions of the contract upon which liability is predicated. *Anderson v. Greene*, 774 F. App'x 694, 697 (2d Cir. 2019) (citing *Sud v. Sud*, 621 N.Y.S.2d 37, 38 (N.Y. App. Div. 1995)); *see also Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 450 (E.D.N.Y. 2013).

As with plaintiffs' discrimination claims, plaintiffs do not argue in opposition to defendant's motion to dismiss. Without deeming these claims abandoned, the court finds plaintiffs' complaints do not sufficiently plead the performance element of a breach of contract claim. Plaintiffs do not allege or argue the existence of a contract; only that Molloy promulgates certain policies and procedures. Although plaintiffs make no argument that the court should infer that a contract existed on the basis of these policies, New York courts have found an *implied* contract arises when a student enrolls at a university. *Tripp*, 48 F. Supp. at 224 (citing *Carr v. St. John's Univ.*, 231 N.Y.S.2d 410, 413 (N.Y. App. Div. 1962)). The contract's implicit terms require the university to act in good faith and the student to satisfy her academic requirements and

comply with the university's procedures.  *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206 (S.D.N.Y. 1998).

Even if the court found plaintiffs sufficiently pleaded the existence of an implied contract, their claims for breach of contract fail because they make no allegations as to their own performance of the contract.  Indeed, the complaints allege plaintiffs' own breach by failing to comply with RCP's grade requirements.  Moreover, and as discussed above, plaintiffs fail to plead a discriminatory motivation by defendant; thus, they fail to plead defendant breached the implied contract.  For these reasons, plaintiffs have not sufficiently pleaded a claim for relief for breach of contract. Defendant's motion as to this cause of action is therefore GRANTED.

V.      **Plaintiffs' Remaining Causes of Action**

To the extent plaintiffs bring claims under 42 U.S.C. § 1985, for an alleged conspiracy to interfere with civil rights by Molloy and the former-defendants, those claims are similarly dismissed.  The four elements of a § 1985(3) claim are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived

of any right of a citizen of the United States. *Mian*, 7 F.3d at 1087–88 (citing *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 828–29 (1983)). The conspiracy must also be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.*

For the reasons plaintiffs' substantive discrimination claims fail, so to do their claims, if any, for a conspiracy to discriminate. The court finds plaintiffs have not sufficiently pleaded a substantive claim under Title VI or § 1981; plaintiffs also have not pleaded sufficient facts to sustain a conspiracy claim based on any unlawful agreement between the former-defendants and Molloy. *See Streck v. Bd. of Educ. of E. Greenbush Sch. Dist.*, 280 F. App'x 66, 67-68 (2d Cir. 2008); *see also Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000) (affirming district court's dismissal of § 1985 claim when it dismissed underlying § 1981 claim for failure to plead discriminatory animus). Furthermore, the complaints include entirely conclusory and formulaic allegations concerning the agreements between and knowledge of the now-dismissed defendants. Thus, plaintiffs have failed to adequately plead a claim for relief under 42 U.S.C. § 1985. Defendant's motion to dismiss plaintiffs' § 1985 claims is GRANTED.

Finally, to the extent plaintiffs bring a claim for sexual harassment or age discrimination under any of the statutes they invoke, the complaints include not a single allegation that could support such a claim. Plaintiffs' opposition to the instant motions is similarly silent. For this reason, defendant's motion to dismiss plaintiffs' claims for sexual harassment and age discrimination, if any, is GRANTED.

**CONCLUSION**

For the foregoing reasons, defendant's motions to dismiss the complaints in Docket Nos. 16-CV-276, 16-CV-278, and 16-CV-279 are GRANTED. Defendant is directed to serve a copy of this Order on plaintiffs at their respective addresses of record and note service on the docket.[10]

Given plaintiffs' *pro se* status, however, the court will permit them leave to replead, as it does not find that amendment would be futile. If plaintiffs elect to file an amended complaint, they each must provide facts pertinent to their respective claims and cannot rely on generalized allegations of discrimination. Should plaintiffs file an amended complaint, it must be filed within 30 days from the date

---

[10] Given that plaintiffs were each represented at the beginning of this action and are now *pro se*, their respective addresses may not be in the court's record. Defendant shall serve plaintiffs at their last known addresses, ascertained either from its own records or from an unredacted version of the complaint filed in the respective actions which appear to contain the plaintiff's respective addresses. Defendant's affirmation of service shall note where service was made.

of this order, must be captioned "AMENDED COMPLAINT," and bear plaintiffs' respective docket number.

Plaintiffs are advised that an amended complaint does not simply add to the first complaint and, if filed, will completely replace their respective original complaints. Therefore, plaintiffs must include in the amended complaint all the necessary and relevant information that was contained in the original complaint. If plaintiffs fail to file an amended complaint within the time allowed, judgment dismissing this action shall enter for the reasons set forth herein.

**SO ORDERED.**

Dated:   September 26, 2019
         Brooklyn, New York

                                    _____/s/_____
                                    **Kiyo A. Matsumoto**
                                    United States District Judge