UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JANICE MINTO, DEBRA BACCHUS and DYTRA SEWELL,

Plaintiffs,

-against-

MOLLOY COLLEGE, et. al,

Defendants.
-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
16-CV-276 (KAM) (AYS)
16-CV-278 (KAM) (AYS)
16-CV-279 (KAM) (AYS)

**SHIELDS, Magistrate Judge:**

Plaintiffs, Janice Minto ("Minto"), Debra Bacchus ("Bacchus"), and Dytra Sewell ("Sewell") (collectively "Plaintiffs"), commenced three separate actions against Molloy College ("Molloy" or the "College"), and certain of its employees, on January 19, 2016. (Docket Entry ("DE") [1].) Although initially docketed separately, the three lawsuits have now been consolidated, and are being adjudicated together. (Order of Matsumoto, J., dated Jan. 23, 2020.)

Plaintiffs were students in Molloy's Respiratory Care Program (the "RCP" or the "Program"). After receiving grades below those required to maintain their enrollment, each was expelled from the Program. Plaintiffs claim that their expulsions violated Federal and State anti-discrimination laws, as well as their contracts with Molloy. (DE [1], [78-5], [78-6], [78-7].)[1] The discrimination claims allege that Plaintiffs were subject to race, sex and age discrimination.

---

[1] Plaintiffs' Amended Complaints appear on the docket herein as attachments to Defendants' motion to dismiss. The Minto Amended Complaint appears at DE [78-5]; the Bacchus Amended Complaint is filed at DE [78-6], and the Sewell Amended Complaint is filed at DE [78-7]. These documents are redacted to protect personal information. The redactions are immaterial to this decision.

Plaintiffs name the College as a defendant, as well as certain individuals who were Molloy employees.

In a decision dated September 26, 2019, the District Court dismissed Plaintiffs' Complaints in their entirety for failure to state a claim.  See Minto v. Molloy College, Nos. 16-CV-276, 16-CV-278, 16-CV-279, 2019 WL 4696287, at *1 (E.D.N.Y. Sept. 26, 2019).  The dismissal was without prejudice to re-plead.  See id. at *1.  On November 1, 2019, Plaintiffs filed their Amended Complaints.  (DE [78-5], DE [78-6], DE [78-7] (collectively the "Amended Complaints")).  With the exception of certain factual details that are not material to this decision, Plaintiffs allege the same legal causes of action based on the same set of facts.  Thus, they uniformly complain of race, sex and age discrimination.  Their claims fall into two categories: (1) those alleging that they were unfairly treated and graded by Defendant Professor Tralongo ("Tralongo"), and (2) those alleging that they were wrongly expelled from the RCP, and denied the opportunity to transfer their credits to a different Molloy program.  The claims centered on Tralongo's conduct have already been noted as likely time-barred.  See Minto, 2010 WL 4696287, at *6.  The latter were previously dismissed for failure to plausibly plead intentional discrimination.  Id. at *7.

Presently before the Court, upon referral from the Honorable Kiyo A. Matsumoto for a report and recommendation, is Defendants' motion to dismiss Plaintiffs' Amended Complaints, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (DE [77]; Order of Matsumoto, J., dated Oct. 19, 2020.)  For the reasons set forth below, this Court respectfully recommends that the motion be granted in part and denied in part.

Specifically, the Court recommends that all claims against the individually named defendants be dismissed.  The Court further recommends that claims centered around Tralongo's

conduct (which undoubtedly arose in December of 2012) be dismissed as time-barred. In addition, the Court recommends that Plaintiffs' conspiracy claims, brought pursuant to 42 U.S.C. § 1985 and State law, as well as their 42 U.S.C. § 1986 claims, be dismissed. The final claims recommended for dismissal are Plaintiffs' claims for breach of contract. These recommendations leave Molloy as the sole defendant.

The only causes of action that remain viable against Molloy are those alleging that Plaintiffs were wrongly expelled from the RCP, and/or denied the opportunity to transfer credits earned to a different program. While these claims are alleged under Federal and State law, the only Federal claims alleged are of race discrimination. The state law claims allege race, sex and age discrimination. As to all of these claims, the Court holds that the present pleadings of disparate treatment are sufficient to state claims of discrimination. While Plaintiffs' claims may ultimately be dismissed on summary judgment or at trial, dismissal without any discovery is premature.

## BACKGROUND

### I. Documents Considered

As required in the context of a motion to dismiss, the factual allegations in the Amended Complaints, though disputed by Defendants, are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of the Plaintiffs. See Hu v. City of New York, 927 F.3d 81, 88 (2d Cir. 2019) (setting forth standard of review under Rule 12(b)(6) motion). While facts to consider in the context of a Rule 12 motion to dismiss are generally limited to those set forth in the pleadings, a court may consider matters outside of the pleadings under certain circumstances. Specifically, in the context of a Rule 12(b)(6) motion, a court may consider: (1) documents attached to the Complaint as exhibits or incorporated by reference

therein; (2) matters of which judicial notice may be taken; or (3) documents upon the terms and effects of which the Complaint "relies heavily" and which are, thus, rendered "integral" to the Complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 152-153 (2d Cir. 2002); see also Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995). The Court turns now to discuss the facts set forth in the Amended Complaints, construed in Plaintiffs' favor.

## II. Facts

### A. Plaintiffs and Facts Preceding Their Expulsions

Plaintiffs are African-American women, all over the age of forty, who were students in the RCP. (DE [78-5] at ¶10; DE [78-6] at ¶10; DE [78-7] at ¶10.) On January 17, 2013, each Plaintiff was informed that they were expelled from the RCP. (DE [78-5] at ¶ 31; DE [78-6] at ¶ 31; DE [78-7] at ¶ 31.) Prior to that date, each Plaintiff had earned in excess of seventy-two credits in the Program. (DE [78-5] at ¶12; DE [78-6] at ¶12; DE [78-7] at ¶13.)

Events that occurred during the Fall of 2012, and in the aftermath of Hurricane Sandy, are detailed in the Amended Complaints. In the days and months following the hurricane (which occurred on October 29, 2012), each Plaintiff suffered a personal tragedy: Minto's mother passed away in February of 2013 after a long illness, (DE [78-5] at ¶15-16); Bacchus' aunt passed away soon after the hurricane, (DE [78-6] at ¶ 15-16); and Sewell's mother passed away on the same day as the hurricane. (DE [78-7] at ¶ 16-17.)

Plaintiffs claim that Molloy emailed students to advise them that due to the hurricane (and the period of time that the College was therefore closed), they would be given latitude in demonstrating competence in coursework. (DE [78-5] at ¶ 17; DE [78-6] at ¶ 17; DE [78-7] at ¶ 18.) Molloy's notice is alleged to have suggested that faculty provide students with "specific

accommodations" to allow them to complete their courses.  (DE [78-5] at ¶ 18; DE [78-6] at 17; DE [78-7] at ¶ 19.)  Plaintiffs do not specify the nature of the accommodations envisioned.  They do, however, allege that they were denied any special consideration.  (DE [78-5] at ¶ 19; DE [78-6] at ¶ 18; DE [78-7] at ¶ 20.)

In addition to advising faculty to extend accommodations, Plaintiffs allege that students were "implored from exercising their options to withdraw from courses without penalty based on the willingness of the college to be flexible with respect to deadlines."  (DE [78-5] at ¶17-18; DE [78-6] at ¶16-17; DE [78-7] at ¶18-19.)  The Court interprets this pleading as Molloy's advice that students should refrain from withdrawing from the Program based upon an inability to comply with deadlines.

Plaintiffs allege that they were students of Defendant Professor Robert Tralongo.  (DE [78-5] at ¶ 13; DE [78-6] at ¶ 13; DE [78-7] at ¶ 14.)  Tralongo is alleged to be a professor and employee of Molloy who served as the Program's director.  (DE [78-5] at ¶ 6; DE [78-6] at ¶ 6; DE [78-7] at ¶ 6.)  He is alleged to have ignored the College's notice regarding post-hurricane accommodations.  (DE [78-5] at ¶ 19; DE [78-6] at ¶ 18; DE [78-7] at ¶ 20.)  Indeed, he is alleged to have refused to accommodate Plaintiffs' needs in the wake of both the hurricane and their personal losses.  (DE [78-5] at ¶ 20; DE [78-6] at ¶ 20; DE [78-7] at ¶ 21.)  As a result of this failure to accommodate, Plaintiffs each received a grade of C from Professor Tralongo in two RCP courses for the Fall 2012 semester.  (DE [78-5] at ¶ 25; DE [78-6] at ¶ 25; DE [78-7] at ¶ 25.)  It is alleged that when awarding these C grades, Tralongo knew that he was "intentionally denying" Plaintiffs the benefit of the accommodations that Molloy "was asking faculty to extend all students due to the events related to the hurricane."  (DE [78-5] at ¶ 21; DE [78-6] at ¶ 19; DE [78-7] at ¶ 21.)  Plaintiffs' grades fell below the Molloy RCP requirement of attaining a grade of

at least C+ in all required courses. It is undisputed that this grade requirement appears in the Molloy course catalog. (DE [78-5] at ¶ 26; DE [78-6] at ¶ 26; DE [78-7] at ¶ 26.)

B. Plaintiffs' Expulsions and Requests for Post-Expulsion Review

On January 17, 2013 – the first day of classes for the Spring 2013 semester – Plaintiffs learned that they had been expelled from the RCP as a result of their failing grades. (DE [78-5] at ¶ 31; DE [78-6] at ¶ 31; DE [78-7] at ¶ 31.) On January 18, 2013, each Plaintiff sought out Defendant Mary Reilly ("Reilly"), Molloy's Associate Dean for Academic Services and Academic Integrity, to appeal their expulsions and discuss their options. (DE [78-5] at ¶ 35; DE [78-6] at ¶ 35; DE [78-7] at ¶ 35.) Each was told by Reilly that because they had already repeated more than one class in the Program, "in accordance with the rules" that were "listed in the College Course Catalog," they were ineligible to continue in the RCP. (DE [78-5] at ¶ 33; DE [78-6] at ¶ 33; DE [78-7] at ¶ 33.)

Each Plaintiff also contacted Reilly to discuss alternative degree options. Each asked if they could transfer credits earned in the RCP program toward obtaining a Bachelor of Science degree in the College's Health Service Leadership ("HSL") program. (DE [78-5] at ¶ 35; DE [78-6] at ¶ 35; DE [78-7] at ¶ 35.) Reilly is stated to have told each Plaintiff that because of their expulsions, they were ineligible to transfer their RCP credits toward a Molloy HSL degree. (DE [78-5] at ¶ 35; DE [78-6] at ¶ 35; DE [78-7] at ¶ 35.)

C. Allegations of Discrimination

Generalized allegations of race, sex and age discrimination set forth in Plaintiffs' initial Complaints were held insufficient to plausibly plead discriminatory intent. See Minto, 2019 WL 4696287, at *7-10. The Amended Complaints amplify Plaintiffs' factual allegations of discrimination on the basis of disparate treatment by describing the treatment of four other

students in the Program. Plaintiffs allege that these comparators were afforded opportunities that they were denied, on account of race, sex and age discrimination. One comparator is alleged to have been allowed to transfer her RCP credits to the HSL program – a transfer option that Plaintiffs allege Reilly denied them. The other three are alleged to have been allowed to repeat courses and/or maintain their good standing in the RCP despite failing grades or other academic misconduct. Specifically, Plaintiffs allege facts about the following four individuals, on information and belief:

- Jennifer Boyle, a female Caucasian student who is significantly younger than Plaintiffs, is alleged to have withdrawn from the RCP in the fall of 2010 but, on information and belief, was allowed to remain in the HSL program to complete her degree;

- Benny Matthew, a male, younger RCP student of Indian descent, is alleged to have been allowed to remain in the RCP from 2003 through 2012, despite failing many classes in violation of College rules;

- Vincent Martines, a male RCP student described as "Caucasian with Hispanic last name," failed RCP classes, which should have resulted in his dismissal from the RCP;

- Brian Burton, a male Caucasian RCP student alleged to be younger than Plaintiffs, did not regularly attend his clinical rotation and forged his clinical rotation paperwork to make it appear as though he had attended the rotation. The College is alleged to have known or should have known of this activity but nonetheless allowed him to pass and graduate from the RCP.

(DE [78-5] at ¶¶ 41-46; DE [78-6] at ¶¶ 41-46; DE [78-7] at ¶¶ 41-46.)[2]

In addition to statements regarding alleged comparators, the amended pleadings refer to remarks made by Tralongo. These remarks refer to race and sex; they do not refer to age. Specifically, Plaintiffs' amended pleadings state that Tralongo "made disparaging remarks about women, African Americans, various religious denominations . . . creating a hostile environment

[2] Plaintiffs make serious allegations regarding each of the students named as comparators. The Court notes that such allegations are nothing more than Plaintiffs' beliefs regarding facts. The Court expresses no opinion as to the grades or academic honesty of any of those named.

for [themselves] and the other students in [their] classes with him." (DE [78-5] at ¶13; DE [78-6] at ¶ 13; DE [78-7] at ¶ 14.) Tralongo is further stated to have "made an inappropriate sexual reference which he described as the 666 rule." (DE [78-5] at ¶ 13; DE [78-6] at ¶ 13; DE [78-7] at ¶ 14.) "That rule, according to Tralongo, specified that women were interested in men for 1, a six figure salary; 2, being six foot tall and 3, for a six inch penis." (DE [78-5] at ¶ 13; DE [78-6] at ¶ 13; DE [78-7] at ¶ 14.) Plaintiffs further allege that Tralongo made "derogatory and lewd comments about women, racial and ethnic minorities, throughout the Fall 2012 semester in the classes [Plaintiffs] attended . . . ." (DE [78-5] at ¶112; DE [78-6] at ¶ 112; DE [78-7] at ¶ 112.) He is alleged to have "engaged in this offensive behavior in an open class lecture to demonstrate his power over minority students in his classes and in particular women of color." (DE [78-5] at ¶113; DE [78-6] at ¶ 113; DE [78-7] at ¶ 113.) Tralongo is further stated to have been "openly disdainful of women of color throughout the entire semester unfavorably describing them as welfare queens in at least one lecture." (DE [78-5] at ¶114; DE [78-6] at ¶ 114; DE [78-7] at ¶ 114.)

Despite pleading that Tralongo singled out women of color for unfair treatment, Plaintiffs allege in clear detail that Tralongo treated <u>all</u> of his students unfairly. Thus, Tralongo is alleged to have ignored Molloy's "attempt to offer accommodations to students who were negatively impacted by Hurricane Sandy saying that <u>he had no intention of providing any accommodations to any of his students</u>." (DE [78-5] at ¶115; DE [78-6] at ¶ 115; DE [78-7] at ¶ 115 (emphasis added).) As further evidence of Tralongo's overall unfair behavior, he is alleged to have scheduled an exam on the day after Molloy re-opened after the hurricane "which 2/3 of the class failed." (DE [78-5] at ¶116; DE [78-6] at ¶ 116; DE [78-7] at ¶ 116.) Plaintiffs state that "[i]t was almost as though he scheduled the exam <u>to purposefully cause the majority of his students to</u>

fail." (DE [78-5] at ¶116; DE [78-6] at ¶ 116; DE [78-7] at ¶ 116 (emphasis added).) Tralongo "did not offer any other exam or other academic alternative to offset the class's poor performance on the test." (DE [78-5] at ¶116; DE [78-6] at ¶ 116; DE [78-7] at ¶ 116.) Plaintiffs conclude that Tralongo's "abusive discriminatory behavior throughout the semester, coupled with his refusal to grant the accommodations to students sanctioned by the college resulted in" their failing grades, which led to their dismissals from the RCP. (DE [78-5] at ¶ 119; DE [78-6] at ¶ 119; DE [78-7] at ¶ 119.)

Tralongo is the only defendant alleged to have made discriminatory remarks. There is no particular time frame put on Tralongo's behavior. However, it is without question that his remarks must have occurred prior to the end of 2012, and before Plaintiffs knew of their expulsions. As in their original Complaints, there is no allegation that any of the Plaintiffs complained to anyone at Molloy regarding Tralongo's comments. Nor is there any allegation that Tralongo was a decision-maker when it came to deciding whether Plaintiffs could repeat a course or transfer credits earned in the RCP to the HSL program. Instead, the decision-maker on these issues is alleged to have been Reilly.

## III. Causes of Action

The Amended Complaints allege Federal and State Causes of action as follows:

- First Cause of Action alleging disparate treatment in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. ¶ 2000d ("Title VI");
- Second Cause of Action alleging discriminatory intent of individuals to discriminate on basis of race, national origin, color gender and age in violation of 42 U.S.C. ¶1981 ("Section 1981");
- Third Cause of Action alleging a discriminatory pattern and practice based upon race, origin, gender and color in violation of 42 U.S.C. ¶1985 ("Section 1985");
- Fourth Cause of Action alleging a discriminatory pattern and practice based upon race, origin, gender and color in violation of 42 U.S.C. ¶1986 ("Section 1986");

- Fifth Cause of Action alleging Breach of Contract;

- Sixth Cause of Action alleging violation of New York State Executive Law Section ¶296 (the "NYSHRL");

- Seventh Cause of Action alleging a conspiracy to deprive Plaintiffs of their constitutional rights; and,

- Eighth Cause of Action seeking a tolling of the statute of limitations.

(DE [78-5] at ¶¶ 36-120; DE [78-6] at ¶¶ 36-120; DE [78-7] at ¶¶ 36-120.)

IV.    The Motion to Dismiss

Defendants move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all claims.  The motion seeks dismissal of all claims of discrimination because, despite the factual amplification offered, Plaintiffs continue to fail to plausibly allege intentional discrimination.  In particular, it is alleged that that the circumstances of the comparators described are not sufficiently similar to Plaintiffs to plausibly allege disparate treatment. Plaintiffs' claims against the individual defendants are argued to be barred by a prior stipulation. Additionally, claims of conspiracy involving these individuals are stated to be barred by the intra-corporate conspiracy doctrine.  Finally, Defendants seek dismissal of Plaintiffs' breach of contract claims on the same grounds as held by the District Court in its disposition of the first motion to dismiss.

Having summarized the relevant facts and bases of Defendants' motion, the Court turns to the merits.

DISCUSSION

I.    Legal Principles: Standards Applicable on Motions to Dismiss

      A.    Rule 12

            To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain

"sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (quoting Bell Atlantic Corp. v. Twombly,

550 U.S. 544, 570 (2007)); see also Arista Records, LLC v. Doe 3, 604 F.3d 110, 119-20 (2d Cir.

2010).  Facial plausibility is established by pleading sufficient factual content to allow a court to

reasonably infer the defendant's liability.  See Twombly, 550 U.S. at 556.  "Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

Id. at 555.  Nor is a pleading that offers nothing more than "labels and conclusions" or "a

formulaic recitation of the elements of a cause of action" sufficient.  Iqbal, 556 U.S. at 678

(2009) (quoting Twombly, 550 U.S. at 555).

      B.    Rule 12 Pleading of Discrimination

            At this stage of the proceedings, as in the context of the first motion to dismiss,

Plaintiffs are not required to plead a prima facie case to defeat a motion to dismiss.  See Minto,

2019 4696287, at * 8.  Instead, they need only plead facts that lend "plausible support to a

minimal inference of discriminatory motivation."  Id.; see also Littlejohn v. City of New York,

795 F.3d 297, 311 (2d Cir. 2015)).  Thus, the Court considers the elements of Plaintiffs' prima

facie cases only as "an outline" to decide whether the Amended Complaints satisfy the minimal

pleading required by Rule 12.

            As discussed in further detail below, each of Plaintiffs' claims of discrimination require

the pleading of facts that allow for a plausible inference of intentional discrimination.  The

required discriminatory inference may be drawn either from (1) direct evidence of discriminatory intent, or (2) a showing that Plaintiffs were "subjected to disparate treatment . . . [compared to persons] similarly situated in all material respects to [themselves]." Miranda v. South Country Cent. Sch. Dist., 461 F. Supp. 3d 17, 23 (E.D.N.Y. 2020) (citations omitted).

C.    Plaintiffs' Pro Se Status

Plaintiffs' original Complaints were filed with the assistance of counsel. The Amended Complaints and the opposition to the present motion were filed after Plaintiffs elected to proceed pro se. Therefore, the Court approaches the motion and construes Plaintiffs' papers liberally with "special solicitude" and interprets the amended pleadings to raise the strongest claims that they suggest. Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks omitted). Nonetheless, as required, even pro se complaints must state plausible claims for relief. See Harris v. Mills, 572 F.3d 66, 73 (2d Cir. 2009). Moreover, courts may not read into pro se submissions claims inconsistent with the pro se litigant's allegations, Phillips v. Girdich, 408 F.3d 124, 127 (2d Cir. 2005) (citation omitted), or arguments that the submissions themselves do not "suggest," Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006). Pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted).

Before discussing the viability of Plaintiffs' particular claims of discrimination, the Court addresses issues of individual liability and timeliness.

II.    Individual Liability

Plaintiffs name several individuals as defendants. In addition to naming Tralongo and Reilly, they name Donna Fitzgerald ("Fitzgerald") and Valerie Collins ("Collins") (together with Tralongo and Reilly, the "Individual Defendants"). Fitzgerald is alleged to be the Chairperson of

the RCP.   (DE [78-5] at ¶ 7; DE [78-6] at ¶ 7; DE [78-7] at ¶ 7.)  Collins is alleged to be the Vice President for Academic Affairs and the Dean of the College.  (DE [78-5] at ¶ 8; DE [78-6] at ¶ 8; DE [78-7] at ¶ 8.)  Tralongo and Collins are stated to be sued only in their official capacities.  (DE [78-5] at ¶¶ 6, 8; DE [78-6] at ¶¶ 6, 8; DE [78-7] at ¶¶ 6, 8.)  Fitzgerald and Reilly are stated to be sued in their individual and official capacities.  (DE [78-5] at ¶¶ 7, 9; DE [78-6] at ¶¶ 7, 9; DE [78-7] at ¶¶ 7, 9.)  With the exception of Collins, all individual Defendants are alleged, on information and belief, to be Caucasian.  (DE [78-5] at ¶¶ 6-7, 9; DE [7-6] at ¶¶ 6-7, 9; DE [78-7] at ¶¶ 6-7, 9.)

The Court's review of the docket herein reveals that any and all claims of individual liability have previously been dismissed with prejudice by way of stipulation – a fact that the District Court set upon the record in February of 2020.  (DE [28] (in16-276); DE [27] (in16-278); DE [29] (in16-279); Order of Matsumoto, J., dated Feb. 14, 2020 (reminding parties that Plaintiffs had previously stipulated to voluntarily dismiss all claims against the Individual Defendants with prejudice).)  Accordingly, this Court recommends that all claims against the Individual Defendants set forth in the Amended Complaint be dismissed with prejudice.

III.   Timeliness of Claims Accruing in 2012: Tralongo's Conduct

The Amended Complaints contain a cause of action for "the doctrine of continuous violation to toll the statute of limitations."  (DE [78-5] at ¶¶ 111-20; DE [78-6] at ¶¶ 111-20; DE [78-7] at ¶¶ 111-20.)  Such a cause of action does not state a separate claim and should therefore be dismissed.

However, in light of Plaintiffs' pro se status, the Court construes their pleadings liberally as an attempt to address the District Court's earlier holding and its comments as to the timeliness of claims accruing in late 2012.  In that decision, the District Court noted that claims based upon

Tralongo's comments in class and/or his award of grades of C were complete in December of 2012, and therefore would be time-barred under the applicable three-year statute of limitations. See Minto, 2019 WL 4696287, at *6-7.[3] To the extent that Plaintiffs' pleadings seek to apply the continuing violation doctrine to render these claims timely, the Court recommends against any such ruling. It is well settled that the continuing violation doctrine has no application to discrete acts of discrimination. See Patterson v. Oneida, 375 F.3d 206, 220 (2d Cir. 2004); see also Bowen-Hooks v. City of New York, 13 F. Supp. 3d 179, 205 (E.D.N.Y. 2014) ("[T]he continuing violations doctrine does not apply to discrete acts of discrimination, even if they are related to acts alleged in timely filed charges.") (citation and internal quotation marks omitted). Claims about Tralongo's comments and grading are such discrete acts. It is therefore recommended that to the extent Plaintiffs seek to pursue any such claims, they be dismissed as untimely.

As noted in the earlier dismissal, time-barred conduct may be considered in support of an inference of discrimination. The Court's review of the present pleadings, however, reveals that any such consideration rests upon thin association. As discussed below, the only claims remaining (and therefore the only claims upon which such time-barred conduct might be considered) are Reilly's administrative decisions to expel Plaintiffs for failing grades, and to refuse their requests to transfer credits earned to a different Molloy program. These decisions are alleged to have been made by Reilly after completion of Tralongo's class, and removed from his alleged inappropriate conduct. His conduct and grading in class will likely lend little, if any,

[3] The District Court ruled that claims based upon Plaintiffs' January 17, 2013 expulsions were timely. The Court did not, however, rule expressly on the timeliness of 2012 claims because all claims of discrimination were dismissed for failure to plausibly plead an inference of discriminatory intent.

support to Plaintiffs' claims of discrimination, or their ultimate burden to prove discriminatory intent. Nonetheless, the Court recommends allowance of limited discovery aimed at Tralongo's ability, if any, to make the decisions with respect to the current remaining claims.

The Court further notes that even if Plaintiffs' claims against Tralongo were timely, they would nonetheless fail to state a claim. The Amended Complaints allege clearly that Tralongo failed to grant accommodations to any of his students, not only those who were female, African-American and/or older. According to the clear and detailed pleading, Plaintiffs state that Tralongo never intended to grant any of his students any accommodations and set all of them up for failure by administering an exam that resulted in a two-thirds failure rate. Even broadly construed, Plaintiffs fail to plausibly plead that failing grades of C were awarded based upon race, sex and/or age. Instead, Tralongo appears to have been an equal opportunity unfair grader.

Nor do Plaintiffs' pleadings as to Tralongo's conduct plead a hostile environment based upon sex, age or gender. First, as to age, there is no fact alleged that Tralongo ever made any comment addressed to his students' ages. As to race and gender, the claim is somewhat closer, but nonetheless insufficient to state a claim. Tralongo's comments, while more than inappropriate, do not rise to the level required to state a claim of a sexually or racially hostile environment.

Moreover, to state a claim for hostile work environment, not only must Plaintiffs demonstrate harassment that is "sufficiently severe or pervasive," Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (citations and internal quotation marks omitted), they must also demonstrate a "specific basis for imputing the conduct creating the hostile work environment to the [defendant]." Feingold v. New York, 366 F.3d 138, 150 (2d Cir. 2004) (citing Alfano, 294 F.3d at 373). This requires Plaintiffs to demonstrate that Molloy "either provided no reasonable

avenue for complaint or knew of the harassment but did nothing about it." Feingold, 366 F.3d at 152 (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)) (additional citation omitted). Here, the Amended Complaints contain no allegations that Plaintiffs ever complained to anyone at Molloy about Tralongo's offensive comments; nor that such complaints were ignored. Accordingly, the Amended Complaints fail to allege a basis upon which to impute liability for Tralongo's behavior to Molloy. See Torres v. City of New York, No. 18 Civ. 3644, 2019 WL 1765223, at *4 (S.D.N.Y. Apr. 22, 2019) (dismissing hostile work environment claim where the complaint failed to "sufficiently plead that Defendant failed to provide an avenue for complaint or knew of the harassment and did nothing about it.").

For the foregoing reasons the Court recommends dismissal of Plaintiffs' First Cause of Action with respect to any claims based upon Tralongo's 2012 conduct and/or his decision to award Plaintiffs failing grades.

## IV. Discrimination: Federal and State Claims Alleged

### A. Claims Alleged and Dismissed in Original Complaints

The District Court held that the original Complaints failed to plausibly plead discriminatory animus – whether based upon race, sex or age. See Minto 2019 WL 4696287, at *7. The Court also noted the failure to sufficiently allege substantially similar comparators to permit an inference of discrimination based upon disparate treatment. For these reasons, the Court dismissed all claims based on discrimination, i.e., those alleged pursuant to Title VI, Section 1981, Section 1985 and the NYSHRL. See id. at *7-10.

While Plaintiffs were granted leave to re-plead, they were cautioned that if they elected to file amended complaints, they were required to "provide facts pertinent to their respective claims and [could not] rely on generalized allegations of discrimination." Id. at *13. Plaintiffs have

now alleged new facts in support of their claims. The Court turns to consider whether those fact state any plausible claim of discrimination.

B. Scope of Federal and State Claims Alleged and Considered Herein

Like their earlier pleadings, the Amended Complaints plead federal claims of discrimination pursuant to Title VI and Section 1981.[4] As noted by the District Court, these statutes are applicable only to Plaintiffs' claims of discrimination based upon race. Despite this clear ruling, Plaintiffs continue to allege Title VI and Section 1981 claims on account of gender and age discrimination. These are categories for which these statutes provide no remedy. Because Plaintiffs continue to plead no Federal causes of action for sex or age discrimination, the Court recommends that to the extent that Defendants' motion seeks dismissal of any Federal claim for sex or age discrimination, it should be granted.

Based upon the foregoing, the Court considers the viability of race-based claims of discrimination under Federal and State law, and claims of sex and age discrimination only under State law. The Court turns to the legal standards to evaluate the viability of these claims.

V. Legal Standards Applicable to Plaintiffs' Claims

A. Federal Claims

1. Title VI

Title VI applies to educational institutions receiving federal financial assistance. See Vengalattore v. Cornell Univ., No. 18-cv-1124, 2020 WL 2104706, at *6 (N.D.N.Y. May 1, 2020). Such institutions are prohibited from discriminating on the basis of

[4] Plaintiffs also allege Federal claims under Sections 1985 and 1986. These claims do not allege different categories of discrimination. The former is a claim for conspiracy to deprive civil rights and the latter addresses the failure to intervene in any such deprivation, as discussed further below.

race, color or national origin in allowing participation in any of its programs.  See Manalov v. Borough of Manhattan Community Coll., 952 F. Supp.2d 522, 531 (S.D.N.Y. 2013).  To state a claim under Title VI a plaintiff must plausibly allege: (1) that they were discriminated against on the basis of race; (2) that the discrimination was intentional; and (3) that the discrimination was a substantial motivating factor in the defendant's action.  See Vengalattore, 2020 WL 2104706, at **6-7.  Thus, to avoid dismissal, Plaintiffs must plausibly allege Molloy's receipt of federal funding within the meaning of Title VI, as well as the three aforementioned elements regarding intentional discrimination on the basis of race.  See id.

2.     Section 1981

Section 1981, which prohibits discrimination based upon race, provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981.  Subsection (b) of Section 1981 defines "make and enforce contracts" to include "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir. 2001).  As set forth by the District Court in this matter, "[t]hose activities covered by Section 1981 include enrollment in a university such as defendant Molloy."  Minto, 2019 WL 4696287, at * 7.

To establish a violation of Section 1981, a plaintiff must show intentional discrimination on the basis of race.  See Hill v. City of New York, 136 F. Supp. 3d 304, 329-30 (E.D.N.Y. 2015); see also Gen. Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 389 (1982) (stating that a Section 1981 plaintiff must be able to prove "purposeful discrimination").  As to causation, a plaintiff alleging a race discrimination claim under Section 1981 must plausibly plead that, "but for race, it would not have suffered the loss of a legally protected right."  Comcast Corp. v. National Ass'n of Af. Am.-Owned Media, __ U.S. __, 140 S. Ct. 1009, 1019 (2020); Ikedilo v.

Statter, No. 19-9967, 2020 WL 5849049, at *9 (S.D.N.Y. Sept. 30, 2020); Rubert v. King, No. 19-CV-2781, 2020 WL 5751513, at *6 (S.D.N.Y. Sept. 25, 2020).

To show an inference of discrimination based upon disparate treatment, Plaintiffs must plausibly allege "a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases," such that "the comparator must be similarly situated to the plaintiff in all material respects." Vives v. New York City Dep't. of Corr., No. 15-CV-6127, 2019 WL 1386738, at *15 (E..D.N.Y. Mar. 27, 2019) (internal citations omitted); see also Brown v. Daikin Am. Inc., 756 F.3d 219, 230 (2d Cir. 2014) (explaining that to be "similarly situated," the plaintiff must establish that "she was similarly situated in all material respects to the individuals with whom she seeks to compare herself") (additional citation omitted).  Identical circumstances are not necessary to show; instead, there must be a "reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases." Lizardo, 270 F.3d at 101 (internal citations omitted).  "What is key is that they be similar in significant respects." Id.  The issue of substantial similarity is usually a question of fact for the jury. See Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000).

  B.  State Claims

    1.  NYSHRL

    Like their Federal claims of discrimination, Plaintiffs claim race discrimination based upon the New York State Human Rights Law ("NYSHRL").  They also claim sex and age discrimination under that statute.  The NYSHRL prohibits discrimination based upon all three grounds alleged. See N.Y. Exec. Law § 296(1)(a).  The pleading standards for all of Plaintiffs' claims are generally the same. See Ruiz v. Cnty. of Rockland, 609 F.3d 486, 491 (2d Cir. 2010); Weinstock v. Columbia Univ., 224 F.3d 33, 42 n.1 (2d Cir. 2000).  However,

while a Section 1981 claim requires plausible pleading of "but for" causation, claims under the NYSHRL are properly pled so long as the plaintiff plausibly pleads discrimination as a "motivating factor." Cardwell v. Davis Polk & Wardwell LLP, No. 19-cv-10256, 2020 WL 6274826, at * 21 (S.D.N.Y. Oct. 24, 2020).

2. Breach of Contract

The elements of a breach of contract claim under New York State law are: (1) existence of a contract; (2) performance by the party seeking recovery; (3) non-performance by the other party, and (4) damages attributable to the breach. See Minto, 2019 WL 4696287, at *12. "[T]o withstand a motion to dismiss, a breach of contract claim must allege the essential terms of the parties' purported contract in nonconclusory language, including the specific provisions of the contract upon which liability is predicated." Id. In addition to pleading breach of express contract, the District Court construed Plaintiffs' pleading to set forth a claim of an implied contract. Thus, the Court also noted that "New York courts have found an implied contract" that arises between students and universities which requires the latter to "act in good faith and the student to satisfy her academic requirements and comply" with school procedures. Id. (emphasis in original).

## VI. Disposition of the Motion

1. Pleading of Intentional Discrimination (Section 1981, Title VI and NYSHRL)

In light of the holdings above, the Court considers only whether Plaintiffs' timely claims against remaining Defendant Molloy survive the present motion. They allege Federal and State claims of race discrimination, as well as State claims of sex and age discrimination. They are based upon Plaintiffs' expulsion and the failure to allow them to transfer credits earned in the

RCP to the HSL program. Both of these claims accrued in January of 2013. The Amended Complaints allege discrimination both on the basis of direct evidence and disparate treatment.

First, the Court holds that Plaintiffs continue to fail to plausibly allege direct evidence of unlawful discrimination. As to age, there is no allegation that anyone at Molloy ever commented on Plaintiffs' ages. The only allegations regarding sex or race are in the form of comments made by Tralongo. No other individual is alleged to have engaged in such conduct, and Plaintiffs fail to plausibly allege that anyone else at Molloy knew of Tralongo's comments. There is no allegation that any Plaintiff ever complained about Tralongo, or that the College failed to act when faced with any complaint. Indeed, there is no plausible allegation to support any inference that Reilly or any other named Defendant acted with discriminatory intent with respect to Plaintiffs' only timely claims – those based upon the decisions to expel Plaintiffs and to refuse the transfer of credits. Since Plaintiffs continue to fail to plead direct evidence of discrimination, the Court turns therefore to consider whether Plaintiffs properly state claims of intentional discrimination via the pleading of similarly situated comparators.

As to disparate treatment, Plaintiffs refer to four comparators as described above. One comparator is a Caucasian woman, the other three are male. Of the males named, one is described as of Indian descent, one is described as Caucasian with a Hispanic surname, and one is described only as Caucasian. All four of the comparators are alleged to be younger than Plaintiffs. As to circumstances, the female comparator is alleged to have been allowed to transfer her credits from the RCP program to the HSL program. The male comparators are alleged to have either received failing grades, or to have engaged in academic misconduct. However, unlike Plaintiffs, the males were not expelled from the Program. In sum, Plaintiffs point to a variety of students, none of whom are African-American females over the age of forty,

and all of whom are alleged to have been treated differently and afforded specific opportunities denied to Plaintiffs.

Defendants' motion disputes the veracity of Plaintiffs' claims regarding disparate treatment. They meet each of Plaintiffs' factual allegations with assertions pointing out differences in particular circumstances. Thus, for example, Defendants argue that Plaintiffs cannot assert that they were unfairly treated as women since the comparator who was allowed to transfer credits to the HSL program was also a woman. Defendants dismiss Plaintiffs' arguments regarding the male comparators because their circumstances are stated to have been substantially different from Plaintiffs. Plaintiffs are faulted, for example, for not pleading the precise grades received by each comparator, and circumstances that would clearly show the lack of similarity. (Def. Mem. of Law 5-7.)

Defendants may ultimately be able to prove that the circumstances relied upon by Plaintiffs are very different from their own. Indeed, Defendants may well prevail on a motion for summary judgment before trial. The problem with accepting Defendants' arguments at this juncture, however, is that such acceptance amounts to improper fact-finding at the pleading stage. Because such fact-finding is improper in the context of a motion to dismiss, the Court cannot agree with the Defendants' position at this time.

Therefore, in light of the standards set forth above regarding comparators, and the fact that Plaintiffs need only allege facts "that give plausible support to a minimal inference of discriminatory motivation," Vega v. Hempstead Union Free School District, 801 F.3d 72, 84 (2d Cir. 2015), the Court holds that Defendants' motion to dismiss all claims of discrimination for failure to plead discriminatory intent should be denied. The Court emphasizes that this certainly does not mean that Plaintiffs will prevail, or that their cases will survive summary judgment. It

means only that, at the pleading stage, Plaintiffs have alleged sufficient facts to survive dismissal.

2. Sections 1985, 1986 and State Law Claims of Conspiracy

While Plaintiffs' Title VI, Section 1981 and NYSHRL claims against Molloy survive the pleadings stage, their conspiracy claims asserted against the Individual Defendants do not. Importantly, the Court has already recommended dismissal of all claims against the individually named defendants based upon Plaintiffs' stipulations of dismissal. Even if not barred by their prior stipulations, Plaintiffs conspiracy claims must fail.

Plaintiffs' assert that the Individual Defendants conspired to violate their civil rights, in violation of Section 1985. They further allege that the Individual Defendants violated Section 1986, which "imposes liaiblity on an individual who has knowledge of discrimination prohibited under 42 U.S.C. § 1985. " Vested Brokers, Ltd. V. County of Suffolk, No. 16-CV04945, 2017 WL 4122616, at *10 (E.D.N.Y. Sept. 15, 2017) (citing Graham v. Henderson, 89 F.3d 75, 82 (2d Cir. 1996). However, with respect to Plaintiffs' Section 1985 claim, pursuant to the intra-corporate conspiracy doctrine, "there is no conspiracy if the conspiratorial conduct challenged is essentially a 'single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment.'" Miranda, 461 F. Supp. 3d at 27-28 (dismissing Section 1985 conspiracy claims where defendants were school district and district employees) (citations omitted); Williams v. County of Nassau, No. 15-CV-7098, 2017 WL 1216566, at *6 (E.D.NY. Mar. 30, 2017) ("It is well-settled that, under the intra-corporate conspiracy doctrine, an entity cannot conspire with itself") (quoting Michael v. County of Nassau, No. 09-CV-5200, 2010 WL 3237143, at *5 (E.D.N.Y. Aug. 11, 2010)); Rodriguez v. City of New York, 644 F. Supp. 2d 168, 200 (E.D.N.Y. 2008) (stating that pursuant to the intra-

corporate conspiracy doctrine "officers, agents, and employees of a single corporate entity or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other").  Under this doctrine, the Individual Defendants, who are all employed by the same entity – Molloy – are legally incapable of conspiring to violate Plaintiffs' civil rights.

Moreover, Plaintiffs do not allege facts that would allow this Court to apply any exception to this doctrine.  See Reich v. Lopez, 38 F. Supp. 3d 436, 463 (S.D.N.Y. 2014) (noting that an exception to the doctrine "applies where a plaintiff adequately alleges that each defendant possessed an independent, personal conspiratorial purpose, wholly separate and apart from the entity") (quoting Broich v. Inc. Vill. of Southampton, 650 F. Supp. 2d 234, 247 (E.D.N.Y. 2009)).  Here, there is no plausibly alleged fact that any of the individually named defendants were motivated by some personal stake apart from "merely carrying out . . . [Molloy's] policy."  Reich, 38 F. Supp. 3d at 463 (internal quotation marks and citations omitted).  Accordingly, Plaintiffs' conspiracy claims pursuant to Section 1985 fail as a matter of law.

With respect to Plaintiffs' Section 1986 claims, a "Section 1986 claim is contingent upon a tenable Section 1985 claim."  Vested Brokers, Ltd., 2017 WL 4122616, at *10 (citing Mian v. Donaldson, Lufkin & Jenrette Secs. Corp., 7 F.3d 1085, 1088 (2d Cir. 1993)).  Having found that Plaintiffs fail to state a claim under Section 1985, their Section 1986 claims must also be dismissed.

For the foregoing reasons the Court recommends that Plaintiffs' claims pursuant to Sections 1985 and 1986, as well as any State law claims of conspiracy, be dismissed.

3.    Breach of Contract

Plaintiffs' claims for breach of express contract were dismissed because they failed to plead their own performance of any contract they had with Molloy.  See Minto, 2019 WL 4696287, at *12.  Any claim for breach of an implied contract was further dismissed because, in the absence of discriminatory motive, there could be no violation of the implied covenant to act in good faith.  See id.  Arguing for dismissal of the amended pleadings, Defendants state that nothing has changed with respect to the breach of contract claims. Plaintiffs counter that the failure to timely notify Plaintiffs of their expulsions until it was too late to appeal adequately alleges lack of good faith.  Even assuming that Plaintiffs thereby properly plead Molloy's lack of good faith, the continued failure to plead contract performance requires dismissal.  As discussed above, there is no dispute that Plaintiffs were required to maintain grades of C to stay in the RCP.  There is also no dispute that they failed to maintain the grades required to remain in good standing.  Such failure amounts to non-performance of any contract with Molloy, whether express or implied.  Because Plaintiffs fail to plausibly allege a necessary element of their contractual claims, their claims of breach of contract should be dismissed. Accordingly, this Court respectfully recommends that the District Court again grant the motion to dismiss any claim of breach of contract.

VII.    Leave to Amend

The Second Circuit has cautioned that, when a liberal reading of a pro se complaint "gives any indication that a valid claim might be stated," the district court should not dismiss the complaint without granting leave to amend.  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted); see also Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  It is well settled, however, that

"leave to amend a complaint need not be granted when amendment would be futile." Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003); see also Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (holding that a "futile request to replead," even by a pro se litigant, "should be denied"). An amendment is "futile" if the proposed pleading would not withstand a motion to dismiss. See Jones v. Phelps Corp., No. 14-cv-84, 2014 WL 2195944, at *3 (N.D.N.Y. May 22, 2014).

Applied here, further amendment of those claims dismissed would be futile. Plaintiffs have already submitted two sets of factually detailed pleadings. The claims recommended to be dismissed are either barred by stipulation (the individual defendant claims), time-barred (the claims that accrued in 2012), or fail to state a claim under applicable federal or state law (Sections 1985, 1986 and the breach of contract claims). Additional pleading would be futile and further delay this matter, which has already been pending for four years.

## VIII. Assistance for Pro Se Plaintiffs

As a final matter, the Court notes Plaintiffs' assertions that in light of the pandemic, they were unable to access the Court's pro se legal assistance clinic. The clinic that is operated by the Hofstra University School of Law, which is located in the Central Islip Courthouse, has remained available for virtual consultation. The clinic can provide limited-scope representation for Plaintiffs and assist in discovery and settlement. While Plaintiffs may pursue their litigation in any way that they choose, the Court wishes to advise the Plaintiffs of this option. The clinic may be reached at (631) 297-2575 or PSLAP@Hofstra.edu.

## RECOMMENDATION

For the foregoing reasons, this Court respectfully recommends that Defendants' motion to dismiss Plaintiffs' Amended Complaints be granted in part and denied in part. Specifically, the Court recommends that the following claims be dismissed: (1) all claims against the

Individual Defendants; (2) Plaintiffs' claims to the extent they are based on Tralongo's 2012 conduct and/or his decision to award Plaintiffs' failing grades; (3) all Federal claims of sex and age discrimination, to the extent any are alleged; (4) Plaintiffs' claims pursuant to Sections 1985, 1986 and for civil conspiracy under State law; and (5) Plaintiffs' breach of contract claims. The claims that remain are Plaintiffs' Title VI and Section 1981 claims for race discrimination and Plaintiffs' NYSHRL claims for race, age and sex discrimination as against Molloy.

OBJECTIONS

A copy of this Report and Recommendation is being provided to Defendant's counsel via ECF. Furthermore, the Court directs Defense counsel to serve a copy of this Report and Recommendation by first class mail and overnight mail to Plaintiffs at their last known addresses, and to file proof of service on ECF within two days. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

**SO ORDERED.**

Dated:  Central Islip, New York
         January 21, 2021

                                                    /s/ Anne Y. Shields
                                                   Anne Y. Shields
                                                   United States Magistrate Judge