UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------X

Janice Minto, Debra Bacchus, *and*
Dytra Sewell,

              Plaintiffs,          **MEMORANDUM & ORDER**

   - against -               No. 16-cv-276 (KAM) (AYS)
                                No. 16-cv-278 (KAM) (SIL)
Molloy University, *formerly known*   No. 16-cv-279 (KAM) (LGD)
*as Molloy College*,[1]

              Defendant.

----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

     Janice Minto, Debra Bacchus, and Dytra Sewell, all Black
women who were over forty years old when they enrolled at Molloy
University (then Molloy College), each brought an action against
Molloy for race, sex, and age discrimination after Molloy
academically dismissed them from its Respiratory Care Program
following the Fall 2012 semester.  After the Court consolidated
the three actions,[2] it dismissed some of the plaintiffs' claims
but allowed them to proceed on others.  Molloy now moves for
summary judgment on the remaining claims.  For the reasons

---

[1] Molloy College changed its name to Molloy University during this litigation.
*See Molloy College Becomes Molloy University*, Molloy University (Mar. 31,
2022), https://www.molloy.edu/news/molloy-college-becomes-molloy-university
[https://perma.cc/E5EM-F98N].
[2] To avoid clutter, the Court cites only the filings in Minto's action,
No. 16-cv-276 (KAM) (AYS), not the filings in Bacchus's action, No. 16-cv-278
(KAM) (SIL), or in Sewell's action, No. 16-cv-279 (KAM) (LGD), each of which
the Court consolidated into Minto's action on January 23, 2020, (*see* Order
Consolidating Case, Jan. 23, 2020).

stated below, the Court grants Molloy's motion.

**BACKGROUND**

The facts and procedural history of this eight-year-long litigation are described in more detail in the Court's Memorandum and Order dismissing the plaintiffs' original complaints, *Minto v. Molloy Coll.* ("*Minto I*"), No. 16-cv-276, ECF No. 48, 2019 WL 4696287 (E.D.N.Y. Sept. 26, 2019), and Magistrate Judge Shields's Report and Recommendation regarding Molloy's motion to dismiss the plaintiffs' amended complaints, *Minto v. Molloy Coll.* ("*Minto II*"), No. 16-cv-276, ECF No. 87, 2021 WL 1394329 (E.D.N.Y. Jan. 21, 2021).  The Court recounts the facts and procedural history here only to the extent necessary to explain its resolution of the present motion.

## I.   Factual Background

Janice Minto, Debra Bacchus, and Dytra Sewell were enrolled in Molloy College's Respiratory Care Program during the 2012-13 academic year.  (ECF No. 150-5, Minto Acad. Tr.; ECF No. 150-7, Bacchus Acad. Tr.; ECF No. 150-9, Sewell Acad. Tr.)  In January 2013, each plaintiff was informed that she had been academically dismissed from the program after receiving a grade of C or lower in Respiratory Science III in the Fall 2012 semester.  (ECF No. 150-11, Jan. 17, 2013, Ltrs. from R. Tralongo.)  The plaintiffs, all Black women who were over forty years old when they enrolled, do not dispute that they were ineligible to

2

continue in the program under a literal reading of Molloy's
written academic standards; however, they allege that Molloy
discriminated against them by allowing white, male, and younger
students "greater latitude in retaking [Respiratory Care]
courses they had failed in order to pass the program" that
Molloy did not allow the plaintiffs.  (ECF No. 150-2, Minto Am.
Compl., ¶ 39; ECF No. 150-3, Bacchus Am. Compl., ¶ 39; ECF
No. 150-4, Sewell Am. Compl., ¶ 39.)  They also allege Molloy
discriminated against them by refusing to allow them to apply
the credits they earned in the Respiratory Care Program toward a
degree in Molloy's Health Service Leadership program.  (Minto
Am. Compl. ¶ 43; Bacchus Am. Compl. ¶ 43; Sewell Am. Compl.
¶ 43.)

**A.   The Respiratory Care Program's Academic Standards**

To graduate from the Respiratory Care Program when the
plaintiffs were enrolled at Molloy College, a student had to
complete a set of general education courses, Respiratory Care
courses, and "related requirement" courses (math, science,
psychology, and ethics courses) with a grade of C+ or better in
each Respiratory Care course and related requirement course.
(ECF No. 151-2, Course Catalog, pp. 152–53.)  Respiratory Care
courses could "be repeated one time," and "[f]ailure to attain a
grade of at least 'C+' when taking [a Respiratory Care] course
for the second time [would] necessitate withdrawal from the

3

Program." (*Id.* p. 153.)   Additionally, "[a] maximum of two [Respiratory Care] courses [could] be repeated within the major," and "[o]n the third failure to achieve a 'C+'" in a Respiratory Care course, "the student [would] be removed from the Program."[3]  (*Id.*)   One exception was the Computers in Respiratory Care course, which was not subject to either of the program's restrictions on repeating courses.  (ECF No. 150-13, Fitzgerald Dep. Tr., 64:14–65:9, 70:4–71:8.)  Although a student was required to earn a C+ or higher in each related requirement course to complete the program, the program-specific restrictions on repeating courses that applied to Respiratory Care courses did not apply to related requirement courses.  (*See* Course Catalog pp. 152–53; *see also* Fitzgerald Dep. Tr. 65:10–21.)

A student who withdrew from a course before taking the final exam would receive a grade of either W (withdrawn) or WF (withdrawn failing) depending on the student's performance when he or she withdrew.  (ECF No. 150-17, Student Handbook, p. 59.)  Although Molloy counted a WF as an F for purposes of calculating

---

[3] The plaintiffs dispute this fact, arguing that students could retake a maximum of four courses.  (ECF No. 151-1, Pls.' Rule 56.1 Counter Statement, ¶ 7.)  In support, they cite page 51 of the Course Catalog, which states that "[a] student may be allowed to repeat a maximum of **four different courses** while at Molloy."  (Course Catalog p. 51.)  The same page, however, also advises students to "[c]heck with the major program of study and the course descriptions for restrictions on repeating."  (*Id.*)  The Court thus finds no genuine dispute that the restrictions stated at page 153 of the Course Catalog are program-specific "restrictions on repeating" consistent with the policy stated at page 51 of the Course Catalog.

the student's grade point average, (*id.*), the Respiratory Care Program did not count grades of W or WF in assessing whether a student complied with the program's rule that Respiratory Care courses could be repeated only one time, (Fitzgerald Dep. Tr. 61:7–62:17).  In other words, a student could *complete* a Respiratory Care course by taking the final exam only twice but could *attempt* the course three times if one of the first two attempts resulted in a W or WF.

**B.   The Plaintiffs' Academic Performance**

Minto received a D+ in Respiratory Science I and repeated it, earning a B+ on the second attempt.  (Minto Acad. Tr. at 3.) She also received a C in Respiratory Science II and repeated it, earning a C+ on the second attempt.  (*Id.*)  Her C in Respiratory Science III in the Fall 2012 semester, (*id.*), was her third grade of C or lower in a Respiratory Care course – excluding Computers in Respiratory Care – and thus rendered her ineligible to continue in the Respiratory Care Program, (*see* Course Catalog p. 153).

Bacchus received a C in Respiratory Science III in the Fall 2011 semester.  (Bacchus Acad. Tr. at 3.)  To continue in the program, she had one opportunity to complete Respiratory Science III again and earn a grade of C+ or higher.  (*See* Course Catalog p. 153.)  She received a C- when she repeated it in the Fall 2012 semester, (Bacchus Acad. Tr. at 3), thus rendering her

ineligible to continue in the Respiratory Care Program. Although Bacchus had received a second and third grade of C or lower in the Fall 2011 semester, (*see id.*), she was not dismissed from the program after that semester; one of those C's was in Computers in Respiratory Care, which was exempt from the restrictions on repeating that applied to other Respiratory Care courses, (*see* Fitzgerald Dep. Tr. 64:14–65:9, 70:4–71:8.)

Sewell received a C- in Respiratory Science I and repeated it, earning a B- on the second attempt.  (Sewell Acad. Tr. at 2.)  She also received a C in Respiratory Science II and repeated it, earning a B- on the second attempt.  (*Id.* at 2–3.) Her C- in Respiratory Science III in the Fall 2012 semester, (*id.*), was her third grade of C or lower in a Respiratory Care course – excluding Computers in Respiratory Care – and thus rendered her ineligible to continue in the Respiratory Care Program, (*see* Course Catalog p. 153).

The plaintiffs allege that after their dismissal from the program, they contacted one of Molloy's administrators in January 2013 to appeal their grades and discuss their options. (Minto Am. Compl. ¶ 35; Bacchus Am. Compl. ¶ 35; Sewell Am. Compl. ¶ 35.)  They were told they were ineligible to continue in the Respiratory Care Program based on the "rules of the program" as "listed in the College Course Catalog" and that it was too late to appeal their grades in Respiratory Science III.

(Minto Am. Compl. ¶ 33; Bacchus Am. Compl. ¶ 33; Sewell Am. Compl. ¶ 33.)  They were further told that they could not apply their Respiratory Care Program credits toward a degree in Health Service Leadership "because [they] had been expelled from" the Respiratory Care Program.  (Minto Am. Compl. ¶ 35; Bacchus Am. Compl. ¶ 35; Sewell Am. Compl. ¶ 35.)

   C.   **Comparator Students' Academic Performance**

   The plaintiffs have submitted academic transcripts from five other students, each of whom is not a Black woman who was over forty years old during the relevant period.  (*See* ECF No. 150-12, Comparator Acad. Trs.)  The plaintiffs allege that these students were "permitted to repeat failed courses beyond the stated limit[s]" in the Course Catalog "or have other requirements of the program waived improperly based upon their race, color, gender and age."  (*See* Minto Am. Compl. ¶ 40; Bacchus Am. Compl. ¶ 40; Sewell Am. Compl. ¶ 40.)

   Student 1 took Respiratory Care courses through the Spring 2012 semester.  (Comparator Acad. Trs. at 2.)  They received a degree in Health Service Leadership in May 2014.  (*Id.* at 3.)  The plaintiffs acknowledge that Student 1 "cannot be compared" to them or "used as an example" because Student 1 "did not finish" the Respiratory Care Program.  (ECF No. 151-1, Pls.' Rule 56.1 Counter Statement, ¶ 40.)

   Student 2 received a grade of C or lower in three

Respiratory Care courses, but one of them was Computers in Respiratory Care.  First, they received a C- in Respiratory Care Laboratory and repeated it, earning a B- on the second attempt. (Comparator Acad. Trs. at 4.)  Second, they received a WF in Respiratory Science I, attempted it again and earned a C, and then repeated it and earned a B-.  (*Id.*)  Third, they received a C in Computers in Respiratory Care and repeated it, earning an A on the second attempt.  (*Id.* at 5.)  They also received a W in Respiratory Science II and Clinical Medicine I and retook both courses, earning a C+ in each course on the second attempt. (*Id.* at 4.)  Finally, Student 2 retook two related requirement courses.  First, they received a W in Organic and Biological Chemistry for Allied Health twice before retaking it and earning a B-.  (*Id.*)  Second, they received a C- in Microbiology and repeated it, earning a C+ on the second attempt.  (*Id.*) Student 2 received a degree in Respiratory Care in August 2012. (*Id.* at 5.)

Student 3 received a C+ or higher in every Respiratory Science course on their first attempt except Pharmacology, in which they first received a C and then earned a C+ on the second attempt.  (*Id.* at 6-8.)  Student 3 repeated three related requirement courses.  First, they received a D+ in Microbiology and repeated it, earning a B on the second attempt.  (*Id.* at 6-7.)  Second, they received a C in Elementary Statistics and

8

later earned a B- in an alternative required math course, College Algebra & Trigonometry. (*Id.* at 6; *see* Course Catalog p. 153.) Finally, they received a C in General Psychology, retook it and received a W, and repeated it and earned a C+. (Comparator Acad. Trs. at 6–7.) Student 3 received a degree in Respiratory Care in August 2013 and a degree in Health Service Leadership in May 2016. (*Id.* at 8.)

Student 4 never received a grade lower than a C+. (*Id.* at 9–10.) They also never withdrew from a Respiratory Care course. (*Id.*) They received a W in one related requirement course, Organic and Biological Chemistry for Allied Health, and earned a B- after repeating it. (*Id.* at 9.) Student 4 received a degree in Respiratory Care in August 2013. (*Id.* at 10.)

Student 5 received a grade of C or lower in three Respiratory Care courses, but one of them was Computers in Respiratory Care. (*Id.* at 11–13.) First, they received a C in Respiratory Science I and repeated it, earning a C+. (*Id.* at 12.) Second, they received a C- in Respiratory Science III and repeated it, earning a B-. (*Id.*) Third, they received a C in Computers in Respiratory Care and repeated it, earning an A. (*Id.*) They also received a W in Respiratory Science II and earned a B- after retaking it. (*Id.*) Student 5 received a degree in Respiratory Care in August 2014. (*Id.* at 13.)

## II.   Procedural Background

Each plaintiff commenced a separate action on January 19, 2016, which the Court since has consolidated, asserting claims against Molloy and several of its faculty members under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1985-86; state contract law; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296; and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68.  (ECF No. 1, Verified Compl.)  After the parties fully briefed Molloy's motion to dismiss, they stipulated to the dismissal with prejudice of certain claims against Molloy and all claims against the individual defendants.  (ECF No. 28.)

The plaintiffs have proceeded *pro se* since mid-2018, after their attorney was suspended from practicing law.  (*See* ECF No. 44, June 28, 2018, Status Hr'g Tr., 2:14-4:11; ECF No. 46, Aug. 2, 2018, Ltr. from J. Kim.)  The Court has encouraged the plaintiffs to seek legal assistance, including from the Hofstra University Pro Se Legal Assistance Program, several times throughout this litigation.  (*See* Order Granting Mot. for Discovery, Sept. 27, 2021; Order Granting Mot. for Extension of Time to Complete Discovery, Feb. 7, 2022; Am. Order Granting Mot. for Pre-Motion Conf., Dec. 16, 2022; Scheduling Order, Jan. 11, 2023; Minute Entry, Jan. 20, 2023.)

10

After each plaintiff's action was reassigned to the undersigned judge, the Court granted Molloy's motion to dismiss the plaintiffs' remaining claims but allowed the plaintiffs leave to amend their complaints. *Minto I*, 2019 WL 4696287, at *13. In dismissing the plaintiffs' discrimination claims, the Court concluded that the plaintiffs' original complaints failed to allege the existence of otherwise similarly situated non-Black, male, or younger "comparator" students who Molloy treated more favorably than it treated the plaintiffs. *Id.* at *9–10. The Court further concluded that the plaintiffs failed to allege other facts that would support a plausible inference of discrimination and that their conclusory allegations of disparate treatment were insufficient. *Id.* at *11. As to the plaintiffs' remaining claims, the Court concluded that the plaintiffs failed to plead facts supporting a breach of contract claim and that their civil rights conspiracy claims failed because they were premised on defective underlying discrimination claims. *Id.* at *12–13.

The plaintiffs filed the operative amended complaints on November 1, 2019. The amended complaints assert claims against Molloy itself and – despite the parties' stipulation, (*see* ECF No. 28) – the individual faculty members named in the original complaints, (Minto Am. Compl. ¶¶ 5–9, Bacchus Am. Compl. ¶¶ 5–9, Sewell Am. Compl. ¶¶ 5–9). The plaintiffs include largely the

11

same claims they included in their original complaints and also
add a request to toll the statute of limitations, which they
list as a separate claim.  (*See* Minto Am. Compl. ¶¶ 36–120;
Bacchus Am. Compl. ¶¶ 36–120; Sewell Am. Compl. ¶¶ 36–120.)
Molloy moved to dismiss the amended complaints, (ECF No. 77),
and the Court referred the motion to Magistrate Judge Shields
for a report and recommendation.

Magistrate Judge Shields recommended dismissing (1) all
claims against the individual defendants, (2) claims against
Molloy based on conduct that fell outside the limitations
period, (3) any federal claims of sex and age discrimination to
the extent they were alleged, (4) all conspiracy-based claims,
and (5) the plaintiffs' contract claims. *Minto II*, 2021 WL
1394329, at *13.  She explained that the plaintiffs already had
stipulated to dismiss their claims against the individual
defendants with prejudice and that the plaintiffs were not
entitled to toll the statute of limitations. *Id.* at *7–8.  She
further explained that Title VI and Section 1981, the federal
statutes under which the plaintiffs brought their discrimination
claims, prohibit only race discrimination and not sex or age
discrimination. *Id.* at *8.  Finally, she explained that the
plaintiffs' conspiracy claims failed based on the intra-
corporate conspiracy doctrine and that the plaintiffs'
allegations regarding their breach of contract claims remained

12

deficient.  *Id.* at *11–12.

As to the plaintiffs' race discrimination claims and state-law sex and age discrimination claims, however, Magistrate Judge Shields recommended allowing the plaintiffs to proceed.  *Id.* at *13.  She reasoned that although the plaintiffs alleged no facts that could plausibly support an inference of "direct" discrimination by Molloy, their amended complaints permitted a reasonable inference of indirect discrimination based on their new allegations regarding comparators that Molloy "treated differently and afforded specific opportunities denied to the plaintiffs."  *Id.* at *10–11.  She elaborated that Molloy "may ultimately be able to prove" that the alleged comparator students were not in fact similarly situated and the plaintiffs' cases may not "survive summary judgment" but that the Court was unable to engage in such factfinding at the pleadings stage, where the Court must assume the truth of the plaintiffs' well-pleaded factual allegations.  *Id.* at *11.  The undersigned judge overruled the plaintiffs' objections to the Report and Recommendation and adopted it in its entirety.  *Minto v. Molloy Coll.* ("*Minto III*"), No. 16-cv-276, ECF No. 92, 2021 WL 804386, at *4 (E.D.N.Y. Mar. 3, 2021).

Following that order, Molloy answered the plaintiffs' complaints, (*see* ECF Nos. 95–97), and the parties proceeded to discovery.  Despite their *pro se* status, the plaintiffs

completed document discovery, sat for their own depositions, and deposed multiple fact witnesses and Molloy's organizational representative.  (*See* ECF No. 130.)  After discovery closed, the Court held a pre-motion conference regarding Molloy's anticipated motion for summary judgment, where the Court explained the summary judgment process to the plaintiffs.[4] (Minute Entry, Jan. 20, 2023.)  The motion is now fully briefed and ripe for adjudication.  (*See* ECF Nos. 149–152.)

## LEGAL STANDARD

Summary judgment is proper when there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it might affect the

---

[4] In part for that reason, the Court excuses Molloy's failure to comply with Local Civil Rule 56.2, which requires a "represented party moving for summary judgment against a party proceeding pro se" to "serve and file as a separate document, together with the papers in support of the motion" a form notice attaching the full texts of Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1.  Based on the Court's thorough explanation of the summary judgment process to the plaintiffs at the pre-motion conference as well as the plaintiffs' proper submission of an opposing memorandum of law, Rule 56.1 counter statement, and exhibits, the Court finds that the plaintiffs understood "the nature and consequences of summary judgment."  *See Jova v. Smith*, 582 F.3d 410, 414 (2d Cir. 2009) (finding absence of notice to *pro se* plaintiffs harmless where "record indicate[d] that [plaintiffs] were fully aware of the requirements of summary judgment" based on adequacy of their filings and their submission of evidence); *Grassel v. Dep't of Educ. of City of N.Y.*, No. 12-cv-1016 (PKC), 2015 WL 5657343, at *4 (E.D.N.Y. Sept. 24, 2015) (finding failure to comply with Local Civil Rule 56.2 "harmless" because it was "obvious" from *pro se* plaintiff's "opposition that he [understood] the nature and consequences of summary judgment" and "no purpose would be served by requiring [defendant] to re-serve its summary judgment motion accompanied by a Local Civil Rule 56.2 notice").

outcome of the case under the governing law.  *Id.*  Unlike at the
pleadings stage, where a claimant may rely on its own bare
allegations to survive dismissal, the non-moving party at the
summary judgment stage must come forward with evidence that
would be admissible at trial.  *Clementine Co., LLC v. Adams*,
74 F.4th 77, 83 n.1 (2d Cir. 2023); *see Weinstock v. Columbia
Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (describing summary
judgment as the "put up or shut up" moment in a civil case)
(quoting Fleming James, Jr., & Geoffrey C. Hazard, Jr., *Civil
Procedure* 150 (2d ed. 1977)).

If the moving party would not have the burden of proof at
trial, its only burden at the summary judgment stage is to
"point out" an absence of evidence to support the non-moving
party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325
(1986).  Once the moving party meets that minimal burden, the
non-moving party must present enough admissible evidence to
create a genuine dispute of material fact in order to avoid
summary judgment.  *Souza v. Exotic Island Enterprises*, 68 F.4th
99, 108 (2d Cir. 2023).

Although district courts must liberally construe *pro se*
filings, particularly in the summary judgment context, *Jackson
v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014), that liberal
construction does not alter the applicable evidentiary burdens,
*Vasquez v. Warren*, 630 F. Supp. 3d 524, 535 (S.D.N.Y. 2022).

15

**DISCUSSION**

Magistrate Judge Shields's Report and Recommendation, which the Court adopted in its entirety, *Minto III*, 2021 WL 804386, at *4, has significantly sharpened the focus of this case.  The only remaining defendant is Molloy itself, and the only remaining claims are for race discrimination under Title VI, Section 1981, and the NYSHRL and for sex and age discrimination under the NYSHRL.  *Id.* at *1.  Moreover, due to the Court's ruling regarding the timeliness of the plaintiffs' claims, *see id.* at *2-3, the only allegedly discriminatory conduct still at issue is Molloy's January 2013 dismissal of the plaintiffs from the Respiratory Care Program and refusal to permit them to transfer their credits, *Minto II*, 2021 WL 1394329, at *2.

**I.   Governing Law**

The Supreme Court created a burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), that governs each of the plaintiffs' remaining claims.  *See Williams v. Pace Univ.*, 192 F. Supp. 3d 415, 421 (S.D.N.Y. 2016) (Title VI); *Orrego v. Knipfing*, 564 F. Supp. 3d 273, 283 (E.D.N.Y. 2021) (Section 1981 and NYSHRL).  Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden to prove a *prima facie* case of discrimination.  *Carr v. N.Y. City Transit Auth.*, 76 F.4th 172, 177 (2d Cir. 2023).  If the plaintiff meets that burden, the defendant must state a legitimate, non-

16

discriminatory reason for its actions. *Id.* The burden then shifts back to the plaintiff to prove that the defendant's reason is mere pretext for unlawful discrimination. *Id.* Establishing a *prima facie* case under any of the three statutes that remain at issue requires proving differential treatment based on a protected characteristic.

First, under Title VI, the plaintiff must establish that he or she (1) was a member of a protected class, (2) suffered an adverse action by the defendant concerning an educational pursuit, (3) was treated differently from similarly situated persons not in the protected class, and (4) was otherwise qualified to continue in the educational pursuit. *Williams*, 192 F. Supp. 3d at 422. Protected classes under Title VI include "race, color, [and] national origin." 42 U.S.C. § 2000d.

Next, under Section 1981, the plaintiff must establish that (1) he or she was a member of a racial minority, (2) the defendant intentionally discriminated against the plaintiff based on race, and (3) the discrimination concerned one of Section 1981's enumerated activities. *Silva v. Farrish*, 47 F.4th 78, 90 (2d Cir. 2022). Section 1981's enumerated activities include "enforc[ing] contracts," 42 U.S.C. § 1981, which courts in this circuit have held include the implied contracts that arise when students enroll at universities, *see,*

17

*e.g.*, *Evans v. Columbia Univ. in the City of N.Y.*,
No. 14-cv-2658 (NSR), 2015 WL 1730097, at *6 (S.D.N.Y. Apr. 13, 2015).

Finally, under Section 296(4) of the NYSHRL, it is an "unlawful discriminatory practice for an educational institution to deny the use of its facilities to any person otherwise qualified" based – among other things – on "race," "sex," or "age." N.Y. Exec. Law § 296(4). In the Second Circuit, a claim under the NYSHRL is evaluated under the same standard as an analogous claim under a federal antidiscrimination law. *Padmanabhan v. N.Y. Inst. of Tech. Campus, N.Y.*, No. 18-cv-5284 (ER), 2019 WL 4572194, at *5 (S.D.N.Y. Sept. 20, 2019). The federal statute analogous to Section 296(4) of the NYSHRL is Title VI. *Id.*; *see Folkes v. N.Y. Coll. Of Osteopathic Med. of N.Y. Inst. of Tech.*, 214 F. Supp. 2d 273, 282 (E.D.N.Y. 2002) (granting summary judgment and finding "for the reasons stated . . . in regard to [plaintiff's] Title VI claim" that plaintiff "presented wholly insufficient evidence of racial discrimination and [could not] invoke section 296(4) on that basis"). Accordingly, the Court evaluates the plaintiffs' Title VI and NYSHRL claims under the same liability standards with the exception that the NYSHRL applies to sex and age discrimination and Title VI does not.

Discrimination may be proven by either direct or indirect

18

evidence. *Williams*, 192 F. Supp. 3d at 422.  Direct evidence might include a disparaging remark about a plaintiff's protected class, *Watson v. Richmond Univ. Med. Ctr.*, 408 F. Supp. 3d 249, 262 (E.D.N.Y. 2019), or a written policy that explicitly discriminates based on a protected characteristic, *Calixte v. Susan Ray Equities Inc.*, No. 21-cv-3623 (RPK), 2022 WL 118738, at *2 (E.D.N.Y. Jan. 22, 2022).  Indirect evidence generally involves proof that the defendant treated similarly situated comparators outside the plaintiff's protected class more favorably than it treated the plaintiff. *Watson*, 408 F. Supp. 3d at 262.  The comparators must be "similarly situated" to the plaintiff "in all material respects." *Radwan v. Manuel*, 55 F.4th 101, 133 (2d Cir. 2022).

Here, the plaintiffs have offered no direct evidence of discrimination, which leaves them to proceed exclusively on an indirect discrimination theory.[5]  Thus, the plaintiffs' claims will survive summary judgment only if a reasonable jury could find based on the evidence provided to the Court that Molloy

---

[5] The closest the plaintiffs come to offering direct evidence is their observation that Molloy hired a Vice President for Diversity, Equity and Inclusion after this litigation commenced.  (*See* Pls.' Rule 56.1 Counter Statement p. 17; ECF No. 150-2 pp. 47–53, Flomenhaft Dep. Tr., 38:6–39:22.) This evidence would be inadmissible at trial.  The Federal Rules of Evidence prohibit attempting to prove that an organization committed misconduct on a particular occasion through evidence that the organization later adopted a practice making such misconduct less likely to occur.  Fed. R. Evid. 407. Additionally, the plaintiffs' allegations that certain faculty members made "disparaging remarks" about protected classes, (*see, e.g.*, Minto Am. Compl. ¶ 13), which they have not substantiated with any evidence, fail to satisfy their evidentiary burden at the summary judgment stage.

permitted non-Black, male, or younger students who were
otherwise similarly situated to the plaintiffs in all material
respects to continue in the Respiratory Care Program or apply
the credits earned from that program toward a degree in the
Health Service Leadership program.

## II.  Indirect Evidence of Discrimination

The plaintiffs have failed to present evidence that Molloy
permitted similarly situated comparators who lacked the
plaintiffs' protected characteristics to continue in the
Respiratory Care Program or apply their credits toward a Health
Service Leadership degree.  Each plaintiff was academically
dismissed from the Respiratory Care Program after failing to
comply with the program's written academic standards as stated
in Molloy's course catalog and student handbook.  (*Supra* pp. 5–
7.)  Minto and Sewell were dismissed for receiving a grade of C
or lower in three different Respiratory Care courses, and
Bacchus was dismissed after receiving a grade of C or lower
twice in the same Respiratory Care course.  (*Id.*)  To be
"similarly situated" to the plaintiffs "in all material
respects," *see Radwan*, 55 F.4th at 133, a comparator would have
to have failed to comply with those same standards yet still
have been permitted to complete the program or to apply his or
her credits earned from the program toward a degree in Health
Service Leadership.

Given those circumstances, none of the five comparators are similarly situated to the plaintiffs in all material respects. Student 1 was never academically dismissed from the Respiratory Care Program and received a grade of C or lower in only one Respiratory Care course.  (Comparator Acad. Trs. at 2–3.) Student 3 also received a grade of C or lower in only one Respiratory Care course.  (*Id.* at 6–8.)  Although Student 3 repeated three related requirement courses, (*id.*), the restrictions on repeating courses that applied to Respiratory Care courses did not apply to related requirement courses, (Course Catalog pp. 152–53; Fitzgerald Dep. Tr. 65:10–21). Student 4 never received a grade of a grade of C or lower in *any* Respiratory Care or related requirement course.  (Comparator Acad. Trs. at 9–10.)

Students 2 and 5 each received grades of C or lower in three Respiratory Care courses, (*id.* at 4–5, 11–13), but they still are not similarly situated in all material respects because one of those courses was Computers in Respiratory Care, which did not count toward the two maximum Respiratory Care courses in which a student could receive a grade of C or lower. It is unclear whether the plaintiffs dispute that Computers in Respiratory Care did not count toward the two maximum courses in which a student could receive a grade of C or lower.  Molloy asserted that fact in paragraph 7 of its Rule 56.1 statement,

21

which the plaintiffs denied explicitly on other grounds. (*See* Pls.' Rule 56.1 Counter Statement ¶ 7.) On one hand, the plaintiffs acknowledged Computers in Respiratory Care as "only a practice class that is allowed to be repeated until passed," (*see id.* p. 17), which would seem to concur with deposition testimony from the Respiratory Program's chairperson during the relevant period, (*see* Fitzgerald Dep. Tr. 64:14–65:9, 70:4–71:8). On the other hand, the plaintiffs appear, at least implicitly, to dispute Molloy's assertions about Computers in Respiratory Care by alleging as a comparator Student 5, who would have been ineligible to continue in the Respiratory Care Program if their initial C in that course had counted as a third grade of C or lower in a Respiratory Care course. (*See* Comparator Acad. Trs. at 12.) Regardless, the Court finds no genuine dispute that Computers in Respiratory Care *did not* count as a "third" grade of C or lower in a Respiratory Care course during the relevant period. The plaintiffs offered no evidence contradicting Molloy's deposition testimony on that issue. Moreover, if Computers in Respiratory Care *did* count toward the two-course maximum, Bacchus should have been academically dismissed from the program after the Fall 2011 semester, when she received her third C in a Respiratory Care course that included Computers in Respiratory Care. (*See* Bacchus Acad. Tr.) Because Bacchus was not dismissed after that semester, the only

22

reasonable inference from the available evidence is that Molloy applied the same standards to her with respect to the Computers in Respiratory Care course that it applied to Students 2 and 5.

Finally, Student 2 was not rendered ineligible to complete the Respiratory Care Program by receiving a WF, a C, and then a B- in Respiratory Science I.  (*See* Comparator Acad. Trs. at 4.) Molloy's course catalog does not state that a WF counted toward the two attempts a student was provided to achieve a C+ in a Respiratory Care course.  (*See* Course Catalog p. 153.)  Further, as the program's chairperson during the relevant period testified, a WF was considered "a withdrawal" and not a completion.  (Fitzgerald Dep. Tr. 61:7-62:17.)  Thus, a student who received a W or WF in a course and took it again for a C or lower "could take it a third time" and would "have to get a C+" or higher.  (*Id.* 62:15-17.)  To challenge the chairperson's testimony, the plaintiffs cited the testimony of Molloy's organizational representative that "a WF is an F," (*see* ECF No. 152-2, Flomenhaft Dep. Tr., 31:15-21), and the course catalog's statement that a WF is "[c]omputed as a failure," (*see* Course Catalog p. 50).  Those statements may be true to the extent that Molloy counted a WF as a failure in terms of calculating students' grade point averages *across all academic programs*; however, they are irrelevant to how the Respiratory Care Program viewed grades of WF for purposes of assessing

compliance with its program-specific restrictions on repeating courses. Thus, the record lacks any evidence that would create a genuine dispute as to whether the Respiratory Care Program viewed grades of WF as counting toward the maximum number of times a student could repeat a Respiratory Care course.

As Magistrate Judge Shields admonished in recommending that the Court deny in part Molloy's motion to dismiss, the fact that the plaintiffs "alleged sufficient facts to survive dismissal" did not imply that "their cases [would] survive summary judgment." *Minto II*, 2021 WL 1394329, at *11. Now, after the parties have had a full opportunity to conduct discovery, the evidence establishes that the academic "circumstances" regarding the comparators "relied upon by [the plaintiffs] are very different from their own." *Id.* None of the evidence in the record shows that the Respiratory Care program relaxed its restrictions on repeating courses for *any student*, much less that it did so on a discriminatory basis. With no direct evidence of discrimination and no evidence that similarly situated comparators were treated more favorably than the plaintiffs were treated, no reasonable jury could return a verdict for the plaintiffs on their remaining claims.

Finally, the plaintiffs make arguments based on other evidence, such as the sufficiency of their professors' efforts to accommodate students in the wake of Hurricane Sandy, errors

in the letters informing them of their dismissal from the Respiratory Care Program,[6] and miscommunications regarding their grade appeals following the Fall 2012 semester.  (*See* ECF No. 151, Pls.' Mem. Opp'n Summ. J., at 2–6; Pls.' Rule 56.1 Counter Statement p. 17.)  The problem with those arguments is that even assuming the plaintiffs were treated unfairly, such evidence is irrelevant to proving a *discrimination* claim without evidence that similarly situated students *were not* treated unfairly in the same ways.  Discrimination is a comparative concept.  *LaBarbera v. NYU Winthrop Hosp.*, 527 F. Supp. 3d 275, 298 (2d Cir. 2021).  It requires the jury to determine whether the defendant in fact treated otherwise like persons differently based on protected characteristics.  *Id.*  Aside from the transcripts of the comparator students, which the Court has already determined do not support a reasonable inference of differential treatment, the plaintiffs have offered no evidence that might show Molloy treated the plaintiffs differently from how it treated students who were not Black, female, or older. The lack of such evidence would make it impossible for a jury to find in the plaintiffs' favor if their cases were to proceed to a trial, so the Court must grant summary judgment for Molloy.

---

[6] To be clear, regardless of whether the letters contained errors, the plaintiffs *in fact* were ineligible to continue in the Respiratory Care program under the program's written academic standards, as explained above. (*See supra* pp. 5–7.)

## CONCLUSION

For the reasons stated above, the Court grants Molloy's motion for summary judgment on the plaintiffs' remaining claims. Molloy's request for oral argument is denied as moot.

The Clerk of Court is respectfully requested to update the caption to reflect that the defendant has been renamed from "Molloy College" to "Molloy University," enter judgment for Molloy University, and close this case.

Molloy is respectfully directed to serve a copy of this Memorandum and Order and the Judgment on the *pro se* plaintiffs via email and FedEx and note service on the docket by 5:00 p.m. on the day after the day that the Clerk of Court enters the Judgment.

**SO ORDERED.**

Dated:     February 6, 2024
           Brooklyn, New York

_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York